## ALLEGHANY CORPORATION *v.* BRESWICK & CO. ET AL.

No. 616.   Decided January 27, 1958.*

*Whitney North Seymour, David Hartfield, Jr.* and *Edward K. Wheeler* for appellant in No. 616.

*Harold H. Levin, Joseph M. Proskauer, Marvin E. Frankel* and *Allen L. Feinstein* for appellants in No. 617.

*Robert W. Ginnane* for appellant in No. 618.

*Together with No. 617, *Gruss et al.* v. *Breswick & Co. et al.*, and No. 618, *Interstate Commerce Commission* v. *Breswick & Co. et al.*, also on appeals from the same Court.

*Edward M. Garlock* filed a motion for Baker, Weeks & Co. et al. for leave to join in the Jurisdictional Statements and Applications for Summary Reversal filed by appellants in Nos. 616 and 617.

*George Brussel, Jr.* for Breswick & Co. et al., appellees.

PER CURIAM.

The judgment of the District Court is reversed and the case is remanded for consideration by that court of the only claim that was left open at this Court's prior disposition of this litigation, to wit, whether "the preferred stock issue as approved by the [Interstate Commerce] Commission was in violation of the Interstate Commerce Act." *Alleghany Corp.* v. *Breswick & Co.*, 353 U. S. 151, 175.

MR. JUSTICE DOUGLAS, with whom THE CHIEF JUSTICE and MR. JUSTICE BLACK concur, dissenting.

These cases are a sequel to *Alleghany Corporation* v. *Breswick & Co.*, 353 U. S. 151. There, the decision of the District Court was reversed and the case was remanded for further proceedings. Now, the decision of the District Court on remand is being summarily reversed on the ground that the basis of the decision below was precluded by the mandate and opinion of this Court. For the reasons which follow, it is my opinion that probable jurisdiction should be noted in these cases.

*First.* I do not agree that the decision below went beyond the scope of the opinion and mandate of this Court.

Alleghany Corporation acquired control of the New York Central Railroad Co., the parent of an integrated system of carriers. Subsequent to the acquisition of control by Alleghany, two of the corporate subsidiaries of the Central system were merged. Alleghany is basically sub-

ject to the control of the Securities and Exchange Commission under the Investment Company Act of 1940, 54 Stat. 789, 15 U. S. C. § 80a–1 *et seq.* Section 3 (c)(9) of that Act exempts companies which are subject to regulation by the Interstate Commerce Commission. The question thus arose as to whether Alleghany, although not a carrier as that term is used in the Interstate Commerce Act, was subject to regulation by the Interstate Commerce Commission because of the merger of the subsidiaries of Central of which Alleghany acquired control and therefore exempt from supervision by the Securities and Exchange Commission. The determination of the Interstate Commerce Commission that Alleghany was under its jurisdiction was reversed by the District Court but this Court then reversed the District Court. 353 U. S. 151. The scope of that holding is the present issue.

In order to attain the status of a carrier the noncarrier must satisfy the requirements of § 5 (2)(a) of the Interstate Commerce Act. The pertinent portions of that section provide:

> "It shall be lawful, with the approval and authorization of the Commission . . . (i) . . . for a person which is not a carrier to acquire control of two or more carriers through ownership of their stock or otherwise; or for a person which is not a carrier and which has control of one or more carriers to acquire control of another carrier through ownership of its stock or otherwise . . . ." 54 Stat. 899, 905, 49 U. S. C. § 5 (2)(a).

The operation of this section is more easily understood if the two clauses pertaining to a person not a carrier are numbered as follows:

> Clause I. "A person which is not a carrier to acquire control of two or more carriers through ownership of their stock or otherwise."

Clause II. "A person which is not a carrier and which has control of one or more carriers to acquire control of another carrier through ownership of its stock or otherwise."

It is clear that a person not a carrier must acquire at least two carriers before being subject to regulation by the Interstate Commerce Commission. There may be one transaction acquiring control of two carriers under Clause I or control may be acquired consecutively under Clause II. Whichever Clause is applicable to the particular facts, § 5 (2)(b) requires the Commission to find that the proposed acquisition is in the public interest.

The District Court held in its first decision that the Interstate Commerce Commission did not have jurisdiction under Clause II because, even if Alleghany had control of a carrier, Central, it did not "acquire control of another carrier" by the device of merging two of the subsidiaries. That court also held that there was no jurisdiction in the Interstate Commerce Commission under Clause I because the Commission had not approved of the acquisition of control of Central. 138 F. Supp. 123.

On appeal, this Court reversed. In deciding "the substantive issues in the litigation," *viz.*, ". . . the jurisdiction of the Commission under §§ 5 (2) and 5 (3) of the Act . . . ," the Court held that the order granting Alleghany the status of a carrier was valid. *Alleghany Corp.* v. *Breswick & Co., supra,* at 160–161. The Court based its decision on Clause II and reasoned that Alleghany controlled Central and had "acquired" another carrier because of the merger. All of the requirements of Clause II of § 5 (2)(a) were satisfied because the Commission had found the merger to be in the public interest within the meaning of § 5 (2)(b). *Louisville & J. B. & R. Co. Merger,* 295 I. C. C. 11, 17.

Because the jurisdiction of the Interstate Commerce Commission could be sustained on this ground, the Court

found it unnecessary to decide if acquisition of a system required approval because it was the acquisition of "two or more carriers" under Clause I. The Court stated:

> "The Commission and Alleghany contend that Commission approval of the acquisition of a single, integrated system is not necessary. We need not decide this question, however, and intimate no opinion on it . . . ." *Alleghany Corp.* v. *Breswick & Co., supra,* at 161.

The Court then held that approval under Clause I was not necessary to sustain *the jurisdiction* of the Commission.

Alleghany had not only obtained a status order declaring it to be a carrier but the Commission had also approved a request by Alleghany to issue preferred stock. Accordingly, the Court "remanded for consideration by the District Court of appellees' claim, not previously discussed, that the preferred stock issue as approved by the Commission *was in violation of the Interstate Commerce Act." Id.,* at 175. (Italics added.)

On remand, the District Court sustained the stock issue against various attacks on its basic fairness but enjoined the order approving the issue on the theory that the Commission was required by Clause I of § 5 (2)(a) of the Act to approve Alleghany's acquisition of control of Central before the stock issue could be approved. 156 F. Supp. 227.

That holding was based on the premise that § 5 (4) of the Act,* which was not construed in our earlier opinion,

---

*Section 5 (4) provides: "It shall be unlawful for any person, except as provided in paragraph (2), to enter into any transaction within the scope of subparagraph (a) thereof, or to accomplish or effectuate, or to participate in accomplishing or effectuating, the control or management in a common interest of any two or more carriers, however such result is attained, whether directly or indirectly, by use of common directors, officers, or stockholders, a holding or

made it necessary for the Commission to consider the legality of the acquisition of control under Clause I, as well as Clause II, of § 5 (2)(a). For § 5 (4) makes it "unlawful" without Commission approval for any person "to enter into any transaction within the scope" of § 5 (2)(a)—whether Clause I or Clause II. And § 5 (7) authorizes the Commission to investigate and determine whether § 5 (4) has been violated.

The holding of the District Court on remand did not question the basis of our earlier holding that the Interstate Commerce Commission, not the Securities and Exchange Commission, had jurisdiction of these transactions. It only determined the issue which we held to be open on remand—whether the transactions were "in violation of the Interstate Commerce Act." 353 U. S., at 175. That issue included not only the legality of the preferred stock issue but also the legality of the acquisition of Central by Alleghany. In other words the force of § 5 (4) and § 5 (7) makes Clause I of § 5 (2)(a) applicable as well as Clause II. That at least is the force of the argument under § 5 (4) and § 5 (7), and I for one cannot say it is frivolous or unsubstantial.

This Court decided the conflicting jurisdictional claims of two governmental agencies and remanded the case without precluding the District Court, as I see it, from deciding that approval of the acquisition of a system is required under § 5 before the preferred stock can be issued. No one, at least no lawyer or judge, should be confused by the fact that this Court held approval of the acquisition was not necessary under the facts of this case for one

investment company or companies, a voting trust or trusts, or in any other manner whatsoever. It shall be unlawful to continue to maintain control or management accomplished or effectuated after the enactment of this amendatory paragraph and in violation of its provisions. As used in this paragraph and paragraph (5), the words 'control or management' shall be construed to include the power to exercise control or management."

reason (jurisdiction) and the District Court held approval was necessary for another reason (compliance with the Act before the stock could be issued). Respect for the considered and well-reasoned decision of this three-judge District Court alone should convince us there has been no defiance of our mandate.

*Second.* Even if there be doubts as to the force of this reasoning, we should hear this case on the merits. The only basis on which it can be argued that the mandate precluded the decision is that this Court not only decided that the Interstate Commerce Commission had jurisdiction over Alleghany but also that the Commission properly exercised that jurisdiction in authorizing the issuance of the stock without approving the acquisition of control of Central. No such issue was presented to us earlier. The only way it is even possible to read such a holding from the opinion and mandate is by implication, since nowhere in the opinion is this particular problem mentioned. The issue is now forcefully presented by the decision of a lower court. By reversing summarily on this appeal a substantial question is resolved *sub silentio.*

The question whether or not the acquisition of a carrier system is the acquisition of "two or more carriers" within the meaning of § 5 (2)(a)(i) of the Act (Clause I) seems plainly to be a substantial one. To repeat, the prior opinion of the Court in this case did not decide this problem. Yet it is arguable that the acquisition of a system is the acquisition of two or more carriers. Until this case, it apparently has been the consistent view of the Commission that such an acquisition was the acquisition of two or more carriers. As Division 4 of the Commission stated:

"We long have recognized under section 5, that railroad systems are comprised of 2 or more carriers,

and that control of a single system may not lawfully be effectuated without our approval and authorization. [Citations omitted.] That principle is considered basic, almost as a definition. So much so, that the question of acquisition of a carrier system has never been contested before the Commission, and as far as we know, there have been no court decisions touching on that issue." *Louisville & J. B. & R. Co. Merger*, 290 I. C. C. 725, 733.

The full Commission held, however, without citation of any authority, that approval of the acquisition of the control of Central was not required by § 5 (2) of the Act. 295 I. C. C. 11, 16–17. And the courts have not resolved that important question.

Moreover, assuming Commission approval is necessary at some time, must it come before the refinancing can be approved? As shown, if the transaction is within Clause I, then § 5 (4) makes the acquisition illegal until Commission approval is obtained. Under those circumstances the District Court said:

"The approval of acquisition and continued control is an obvious first question in any application by Alleghany because unless the Commission intends to approve this control . . . it would be granting a wrongdoer sanctuary from the Investment Company Act; and it would be authorizing and ordering acts in aid of a known violation of the Interstate Commerce Act. The ultimate crucial result of such temporizing would be that by granting seemingly innocuous piecemeal applications, it would unobtrusively foreclose itself from any realistic determination of the fundamental question, because after the passage of time the disruption of the carriers in the system and of the public service, caused by divestiture, would

be so great that it would necessarily be discarded as a practical alternative." 156 F. Supp. 227, 236–237.

Did Congress permit such broken-field running between two statutes, designed to protect the public interest, without a full inquiry by the Commission into the primary acquisition of control of Central by Alleghany? At the very least, there should be a reasoned decision by this Court approving the rule that makes this possible.

I would note probable jurisdiction in these cases.