Crystal Ross DABNEY, as a Stockholder of Alleghany Corporation, on behalf of herself and all other stockholders similarly situated, Plaintiff,

v.

ALLEGHANY CORPORATION et al., Defendants.

United States District Court
S. D. New York.
July 15, 1958.

Lewis M. Dabney, Jr., New York City, for plaintiff.

White & Case, New York City, for defendants. David Hartfield, Jr., Morton Moskin, New York City, of counsel.

DAWSON, District Judge.

In this action two motions have been presented.

1. The first is a motion by the defendants, made under § 11(e) of the Securities Act of 1933 (15 U.S.C.A. § 77k(e)) requiring the plaintiff to file an undertaking for payment of costs in this suit, including reasonable attorneys' fees.

2. The second is a motion by the plaintiff, pursuant to Rule 56(a) and 56(b) of the Rules of Civil Procedure, 28 U.S.C.A. for summary judgment in favor of the plaintiff, declaring that plaintiff, and those similarly situated, have a right to rescind the exchange of securities complained of in the action and granting such other and further relief as may be proper, but leaving for subsequent determination any damages that might be recovered.

### Nature of the Action

The action is brought by plaintiff as a representative action on behalf of herself and all other preferred stockholders of Alleghany Corporation similarly situated. It appears that the plaintiff, who is represented in this action by her husband, as her attorney, was the beneficial owner and holder of five shares of cumulative preferred stock, Series A, of Alleghany Corporation, which was the subject of an exchange offer that is the subject of the litigation. On the exchange plaintiff received for such five shares of stock fifty shares of the 6% convertible preferred stock of Alleghany Corporation and is now the beneficial owner and holder of such stock. The suit is brought against the defendant Alleghany Corporation and certain persons who are or were officers or directors of Alleghany Corporation, and against the executrix of the estate of Robert R. Young, who was, at the time of the transactions complained of, Chair-

man of the Board of Alleghany Corporation.

The action challenges the legality of the exchange offer and exchange of these securities of Alleghany Corporation, which exchange has already been the subject of a lengthy litigation. See Breswick & Co. v. United States, D.C. 1955, 134 F.Supp. 132; D.C.1956, 138 F. Supp. 123; reversed and remanded sub. nom. Alleghany Corp. v. Breswick & Co., 1957, 353 U.S. 151, 77 S.Ct. 763, 1 L.Ed. 2d 726, and 353 U.S. 989, 77 S.Ct. 1278, 1279, 1 L.Ed.2d 1147, decision on remand D.C.1957, 156 F.Supp. 227, reversed and remanded 1958, 355 U.S. 415, 78 S.Ct. 421, 2 L.Ed.2d 374, complaint dismissed D.C.S.D.N.Y.1958, 160 F.Supp. 754.

The complaint alleges that the acts and transactions complained of "were effected pursuant to a conspiracy between the Defendant-Directors to effect and bring about the exchange of stock" in violation of various federal statutes, and in breach of their fiduciary duty to the detriment of the stockholders. The complaint seeks a judgment of this Court declaring that the exchange of the new preferred stock for the old preferred stock "was and is void and voidable at the election of the holders of the new preferred" and granting "relief by way of recission and/or damages." It also seeks judgment that jurisdiction be reserved so that all persons similarly situated with the plaintiff may participate in the relief granted, and in addition, of course, asks judgment for the fees, expenses and costs of the plaintiff's attorney.

The complaint contains three counts. The first count alleges a violation of the anti-fraud provisions of the Securities Exchange Act of 1934 and of the Securities Act of 1933. 15 U.S.C.A. §§ 77q, 78j(b). The second count alleges violation of the registration provisions of the Investment Company Act of 1940, in that Alleghany used the mails in solicitation and exchange of stock without having registered under that act. 15 U.S.C.A. §§ 80a–7(a). The third count alleges a violation of the registration provisions of the Securities Act of 1933, in that Alleghany used the mails in interstate commerce to make its exchange offer and to deliver the new preferred stock without having registered under that act. 15 U.S.C.A. § 77e.

So far as the complaint reveals, the second and third causes of action seem to be predicated on the theory that the offer of exchange of stock required registration under the provisions of § 5(a) of the Securities Act of 1933, 15 U.S.C.A. § 77e(a), and that to make an offer of such exchange constituted a violation of § 7(a) (1) of the Investment Company Act of 1940, 15 U.S.C.A. § 80a–7(a) (1), since Alleghany Corporation was not registered as an investment company under that act.

Whether the offer required registration under the Securities Act of 1933 involves a determination as to whether the security was an "exempted security" under the provisions of § 3(a) (6) of that act, 15 U.S.C.A. § 77c(a) (6), which involves in turn the question as to whether Alleghany Corporation was a "common or contract carrier," the securities of which were subject to the provisions of § 20a(2)–(11) of the Interstate Commerce Act, 49 U.S.C.A. § 20a. See, also, 49 U.S.C.A. §§ 5(2) (a), (3), 314. If the securities were subject to the provisions of the Interstate Commerce Act they were exempt from the registration requirements of the Securities Act. It appears from the decisions of the Three-Judge Court in Breswick & Co. v. United States,[1] that the Interstate Commerce Commission, in connection with the issue of this very stock, granted an application of the Alleghany Corporation to be considered a carrier subject to the provisions of § 20a(2)–(11) of the Interstate Commerce Act. The validity of

---

1. See 134 F.Supp. 132, supra; 138 F. Supp. 123, supra; 353 U.S. 151, at pages 156–157, 77 S.Ct. at pages 766–767, supra.

this action was one of the questions thereafter litigated in the Breswick case hereinabove referred to.

Whether the offer of exchange constitutes a violation of the Investment Company Act of 1940 also raises the question as to whether Alleghany Corporation was a company subject to regulation under the Interstate Commerce Act. If it was, it was not "an investment company" under the definition contained in § 3(c) (9) of the Investment Company Act of 1940. 15 U.S.C.A. § 80a–3(c) (9). Whether Alleghany Corporation was subject to regulation by the Interstate Commerce Commission at the time of the authorization of the exchange of securities was an issue which was litigated in the Breswick case. See 154 F.Supp. 132, at page 137; 353 U.S. 151, at page 174, 77 S.Ct. 763, at page 776. ·

Thus, both the second and third causes of action in the complaint seem to be predicated on the assumption that the offer of issuance and the exchange of the stock of Alleghany Corporation was not a matter which came within the jurisdiction of the Interstate Commerce Commission. If the issuance was a matter within the jurisdiction of the Interstate Commerce Commission, then the stock was an "exempted security" so far as the Securities Act of 1933 is concerned; and likewise, the company was not to be deemed an investment company with reference to those securities under the provisions of the Investment Company Act of 1940.

The first cause of action, on the other hand, is alleged to be based on the anti-fraud provisions of the Securities Act of 1933 and of the Securities Exchange Act of 1934, which provisions, of course, would be effective irrespective of the jurisdiction of the Interstate Commerce Commission. See 15 U.S.C.A. §§ 77l, 77q(c). However, the first fraud on which plaintiff relies, as stated in her brief, was that Alleghany Corporation had stated, in its listing application with the New York Stock Exchange, that the issue of the proposed stock was exempted from registration under the Securities Act of 1933, pursuant to § 3(a) (6) of that act. Of course, if the issuance of the securities was a matter subject to the jurisdiction of the Interstate Commerce Commission, that statement was not fraudulent, so that we come back to the same question of whether the Interstate Commerce Commission had jurisdiction over the issue of the securities, which was a matter litigated in the Breswick case.

The second fraud alleged is that Alleghany Corporation assured the stockholders that the shares would be issued, subject to certain conditions, "as soon as practicable." Plaintiff alleges that this representation was fraudulent because Alleghany was advised, by the filing of one of the Breswick cases in this court, that the exchange offer, even if approved by the Interstate Commerce Commission, would be attacked and therefore was on notice that there might be some delay. This cause of action, of course, raises fact questions as to the nature of the representations, the nature of any knowledge that Alleghany had as to the proposed actions in the Breswick case, and the effect the pendency of such actions would have on the timing of the stock issue.

The Breswick litigation, which was widely publicized, and which has gone up to the Supreme Court on several occasions, has now apparently decided that so far as the record in that case is concerned Alleghany Corporation was subject to the jurisdiction of the Interstate Commerce Commission at the time of the issuance of the new preferred stock and did not have to register under the Investment Company Act of 1940, or to register the securities under the Securities Act of 1933.[2]

2. In the Breswick case, as the Supreme Court stated, the action had been brought before a Three-Judge Court by minority common stockholders to require the Interstate Commerce Commission to set aside its order granting Alleghany Corpo-

### The Motion for Summary Judgment

█ It is hard to believe that the attorney for the plaintiff could sincerely have thought that he could get summary judgment in his favor in a litigation of this nature on the basis of the sketchy affidavits submitted by him. Rule 56(e) of the Rules of Civil Procedure states, with reference to affidavits to be used on a motion for summary judgment:

> "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions or by further affidavits."

The affidavits submitted by the attorneys for both sides on this motion seem to indicate a complete ignorance of the type of affidavit required on a motion for summary judgment. They are replete with argumentative assertions and lacking any proof of the essential facts sworn to by persons competent to establish those facts by their own knowledge. It would seem from plaintiff's papers that she is, in effect, seeking to reargue the issues of the Breswick case.

If she is seeking to reargue the issues as a matter of law then she is in the wrong court. If she is seeking to reargue them on the basis of facts then she has failed to establish the facts by competent affidavits.

Furthermore, it appears that the issues in this case which apparently will arise when the answer is served, such as laches, the statute of limitations, etc., are issues which certainly cannot be decided on the present papers.

If the only issues in the case are issues of law, as plaintiff contends, then it would appear that the fundamental underlying issues have already been decided adversely to the plaintiff in the litigation above referred to. If there are additional issues of fact, those facts have not been established in the manner required by Rule 56. Under the circumstances, if this case is to proceed, the issues should be determined after a trial where the parties will have an opportunity to present a complete record and where the evidence offered will face the test of examination and cross-examination in open court.

The motion for summary judgment is denied.

### The Right to an Undertaking for Costs

So far as the first and third counts of the complaint rely upon violation of the provisions of the Securities Act of 1933, the action is one in which security for costs may be sought under the provi-

---

ration the status of a non-carrier to be considered as a carrier, and the subsequent order approving the new class of preferred stock, and to restrain Alleghany from issuing the new preferred stock. 353 U.S. at pages 158–159, 77 S. Ct. at page 768. The Supreme Court upheld the jurisdiction of the Interstate Commerce Commission and the status of Alleghany Corporation as a non-carrier entitled to be "considered as a carrier" in Breswick. The only issue left open by the Supreme Court was whether "the preferred stock issue as approved by the [Interstate Commerce] Commission was in violation of the Interstate Commerce Act." Alleghany Corporation v. Breswick & Co., 353 U.S. 151, at page 175, 77

S.Ct. at page 777; 355 U.S. 415, at page 460, 78 S.Ct. 421, at page 423. The Three-Judge Court in the Breswick case answered this question in the negative, stating that they believed that "the facts disclosed to the Commission and available as matters of public knowledge were enough to put an expert body on notice of all the alleged undesirable qualities of the issue; that the questions so raised were within the range of expert judgment reserved to the Commission; that its findings thereon satisfy the statute; and that we may not substitute our views for those it expressed." 156 F.Supp. 227, at page 230; 160 F.Supp. 754, at page 756.

sions of § 11(e) of that act.[3]  15 U.S.C.A. § 77k(e).  Plaintiff urges that costs can only be assessed under this section when the court finds that the suit or defense was "without merit," and then contends that the test is the same where a court has to determine whether an undertaking for such costs may be required at the outset of litigation.

It should perhaps be pointed out that to expect the Court to now determine whether a suit or defense is "without merit," when the case has only been instituted, no answer has been filed, some of the defendants have not even been served, and no testimony has been taken, would impose an impossible burden upon the Court.  The Court cannot determine merely from a pleading whether an action is without merit, for as every judge knows, a pleading may bear little or no resemblance to the truth when the facts are ultimately developed.  The Court cannot, therefore, assume that the same test is required for determining whether an undertaking may be required as would be used in determining whether costs should be assessed against the losing party at the conclusion of the litigation.

The provision allowing a court in its discretion to require security for costs in all cases arising under the Domestic Securities subchapter, was added to the Securities Act in 1934 by reason of the fear that that act would be used for "strike suits."  See Loss, Securities Regulation, p. 1092.

■ While the Court should not lightly require posting of security in cases of this nature, Fischman v. Raytheon Mfg. Co., 2 Cir., 1951, 188 F.2d 783, 788, Stella v. Kaiser, D.C.S.D.N.Y.1949, 83 F.Supp. 431, and CCH Fed.Sec.L.Serv. Par. 90, 464 (S.D.N.Y.1949), nevertheless the Court should not avoid its responsibility under this section of the act, particularly where the action does not appear on its face to be likely to succeed.  In such a situation security for costs may be required.  Montague v. Electronic Corp., D.C.S.D.N.Y.1948, 76 F.Supp. 933.  See, also, Loss, Securities Regulation, supra at 1092–1097.

There are other factors which may be taken into consideration by the Court in exercising its discretion.  For example, the value of plaintiff's stock in the present market is stated, without contradiction by the plaintiff, to be less than $800.  However, plaintiff's brief indicates that the amount of damages which might be sought in this representative action might be about $5,000,000 and states that the "stakes in this litigation are large."  Any litigation such as the present litigation will obviously be expensive.

■ While the Court cannot decide on the present record that plaintiff's claim is entirely groundless, it nonetheless does appear, as indicated above, that plaintiff is trying, in part, to reargue matters which have been decided adversely to her position in the protracted Breswick litigation which has already caused the defendant much expense.  The plaintiff sought to intervene in the Breswick litigation to obtain the same relief here sought, but the application for intervention was denied partly because it came too late.  See 160 F.Supp. at page 756, footnote 3.

The Court in the exercise of its discretion believes that it is proper to require the plaintiff to post security for

---

3. Section 11(e) of the Securities Act of 1933 reads, in part, as follows:
" * * * In any suit under this or any other section of this subchapter the court may, in its discretion, require an undertaking for the payment of the costs of such suit, including reasonable attorney's fees, and if judgment shall be rendered against a party litigant, upon the motion of the other party litigant, such costs may be assessed in favor of such party litigant (whether or not such undertaking has been required) if the court believes the suit or the defense to have been without merit, in an amount sufficient to reimburse him for the reasonable expenses incurred by him, in connection with such suit, such costs to be taxed in the manner usually provided for taxing of costs in the court in which the suit was heard."  15 U.S.C.A. § 77k(e).

34

costs for the first and third causes of action alleged in the complaint. The Court fixes the amount of the undertaking at $15,000. So ordered.