**14**

John D. MURCHISON and Clint W. Murchison, Jr., co-partners, d/b/a Murchison Brothers, and Gerard L. Fossland, as stockholders of Alleghany Corporation, on behalf of themselves and all other stockholders similarly situated, Plaintiffs,

v.

Allan P. KIRBY, Randolph Phillips, Fred M. Kirby, Charles T. Ireland, Jr., Charles T. Hill, Alfred E. Perlman, William G. Rabe, Joseph M. Fitzsimmons, Anthony Smith and Alleghany Corporation, Defendants.

United States District Court
S. D. New York.
Jan. 30, 1961.

Townley, Updike, Carter & Rodgers, New York City, for plaintiffs; J. Howard Carter, William P. Hindman, Jr., Walter E. Shuttleworth, New York City, of counsel.

Satterlee, Warfield & Stephens, New York City, for defendants; James F. Dwyer, New York City, of counsel.

Randolph Phillips, New York City, pro se.

WEINFELD, District Judge.

Alleghany Corporation has been the storm center of a series of derivative actions brought by stockholders pur-

portedly for its benefit. This latest action to redress alleged wrongs inflicted upon the Corporation finds the role of the litigants somewhat reversed in that co-plaintiffs herein, the Murchison brothers, were themselves defendants with others in the prior litigations which are the subject of this action. The plaintiffs here seek, in substance, to set aside as fraudulent a settlement of earlier derivative actions in this and state courts entered into by Alleghany and Allan P. Kirby, one of the defendants herein.

Randolph Phillips, a co-defendant appearing pro se, moves to strike the complaint as sham, pursuant to Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C.A., or, in the alternative, for judgment on the pleadings.

Despite the plethora of charges and counter-charges, and the voluminous affidavits and records submitted for and in opposition to these motions, the issues they present are comparatively simple and must be decided within the framework of the applicable rules and controlling authorities, and not upon the extravagance of the recriminatory statements indulged in by the parties.

The present suit, in end result, seeks to nullify the settlement pursuant to which Kirby, upon the payment by him of $1,100,000, was released by Alleghany of all claims asserted against him in the prior derivative actions. The charge made is that the settlement was the product of a conspiracy and corrupt agreement among Kirby, then Alleghany's President, Chairman of the Board and Chief Executive Officer, Ireland, its Executive Vice President, and Phillips, under which Kirby was released from liability to Alleghany for a sum much below what he would have had to pay except for their alleged fraudulent conduct as hereinafter detailed. It is also alleged that the settlement was consummated through fraud, perpetrated upon both this Court and the State Court where the principal derivative action was pending.

The prior actions were commenced in 1954 and 1955 by Alleghany stockholders, who charged directors and officers of the corporation with various breaches of fiduciary duty. Conspiracy charges were also made as against those officials and others. The principal defendants included Kirby, the Murchison brothers (co-plaintiffs herein) and Robert A. Young, then Chairman of its Board and Chief Executive Officer, now deceased.[1]

The State Court action, referred to as the Zenn suit, was a consolidation of ten derivative actions. The federal action was known as the Breswick suit. The relief sought in each was substantially similar.

In July 1955, a stipulation was entered into in the Zenn action under which the Murchisons and others offered to pay $700,000 in cash, plus other consideration in complete settlement. It was opposed as inadequate by, among others, one Samuel Rosen, a stockholder. The Breswick attorneys, who were also co-counsel with Rosen's attorneys, charged in this Court they had been excluded from the negotiations which led to the proposed settlement of the Zenn suit. In consequence, on their application, this Court, on October 27, 1955, enjoined the defendants from pleading as a defense to the Breswick action any judgment in any other action entered pursuant to an agreement not negotiated with the Breswick plaintiffs or their representatives.[2] In practical terms, this gave to the Breswick group a "veto power over any settlement to which they did not agree."[3]

---

1. At the time of commencement of the suit, Kirby was President of Alleghany. Following Young's death, he became Chairman of the Board and Chief Executive Officer, as well.

2. See Breswick & Co. v. Briggs, D.C.S.D. N.Y.1955, 135 F.Supp. 397.

3. Dimock, J., in Breswick & Co. v. Briggs, Civ. No. 98–371, S.D.N.Y., September 22, 1959.

Thereafter, the offer of settlement in the Zenn action was increased to $1,000,000 in cash plus the return by the Murchisons to the Alleghany Corporation of 130,000 shares of voting stock of Investors Diversified Services, Inc. in return for an equal number of nonvoting shares. The State Court Referee, who had also been appointed Special Master by this Court,[4] recommended to the State Court approval of the increased settlement and, based upon his findings, also recommended to this Court the vacatur of its order of October 27, 1955. The State Court approved the Referee's recommendation, finding the augmented proposed settlement fair and reasonable, but directed that no order be entered thereon until this Court's injunction be vacated.[5] However, this Court, upon objection of the Breswick plaintiffs, rejected the Special Master's report and refused to vacate the injunction.[6] The matter was remitted to the Special Master for further report after hearing the Breswick plaintiffs on the issue of the substantiality of the additional offers in relation to the value of the whole claim.

However, before hearings were resumed, negotiations between the Breswick group and Kirby's representatives resulted in an offer of settlement by the latter of $1,100,000, evidenced by a written stipulation dated December 22, 1959. Based thereon, they applied to Judge Dimock for an ex parte vacatur of the order of October 27, 1955, as to Kirby, which was granted on December 24, 1959, but only after a hearing, which was attended by some, but not all, of the attorneys who had appeared for various parties in the two litigations. Before the conclusion of the hearing, the Young estate offered $900,000 and the Murchisons affirmed an earlier proposal to pay $1,000,000, bringing the total cash settlement offered up to $3,000,000. Thereupon Judge Dimock issued an oral but similar order to that granted in Kirby's favor lifting the injunction as to the Murchisons and the Young estate. The effect of these orders was to permit each settling defendant to plead in bar in the Breswick action any judgment entered in the State Court action. In due course appropriate orders and judgments were entered in the Zenn action consummating each settlement, and finally in June 1960 a judgment was entered dismissing the complaint upon the merits as to all defendants.

The present suit by the Murchison brothers, in which they are joined by another stockholder, Fossland, was commenced in September 1960. It contains two counts; the first by Fossland, and the second by Fossland and the Murchison brothers. The relief sought includes reinstatement of the October 27, 1955 order of this Court to the extent of enjoining Kirby from pleading any judgment or order entered in the State Court as res judicata or collateral estoppel; also sought is the ultimate vacatur of the judgments and orders entered in respect to Kirby in this and the state courts and the cancellation of the release to him.

In substance, the complaint charges that following this Court's rejection in September 1959 of the Special Master's recommendation to vacate the stay, Kirby, aware that the Breswick group exercised a veto power over any settlement

---

4. In the State Court action he was a Referee to hear and report on the fairness and adequacy of any proposed settlement. When the increased offer was made in the State Court action, he was appointed Special Master in this Court to hear and report whether the October 27, 1955 order should be vacated.

5. Zenn v. Anzalone, Sup.Ct.1959, 17 Misc. 2d 897, 191 N.Y.S.2d 840.

6. Judge Dimock noted that the Special Master's "finding of substantiality of the additions to the offered settlement is insupportable in the light of the Special Master's refusal to give to the Breswick plaintiffs the opportunity to show that the additions were not substantial in relation to the value of the whole claim." Breswick & Co. v. Briggs, Civ. No. 98–371, S.D.N.Y., September 22, 1959.

as long as the stay remained in effect, conspired, principally with the moving defendant Phillips, allegedly a highly influential adviser to some of the plaintiffs and their attorneys, and Ireland, to obtain a separate settlement of Kirby's liabilities to Alleghany on terms favorable to him and hostile to Alleghany. This purpose, it is charged, was accomplished by Phillips' betrayal of his fiduciary duty to Alleghany and stockholder interests he represented. The complaint alleges that Phillips placed himself in this fiduciary position by reason of his relationship as financial consultant and adviser to the Breswick group and their attorneys, his active participation in the various state and federal court proceedings, including his position as co-plaintiff in a separate but related Breswick suit,[7] and his chairmanship of a protective committee for common stockholders of Alleghany. It is further alleged that thereby he secured substantial domination and control over the Breswick action, over one or more of the objecting stockholders in the Zenn action, achieved a position of trust and confidence with respect to those actions and played a significant role in the negotiations with Kirby, which eventuated in the settlement.

The charge is made that Phillips, Kirby and Ireland conspired and corruptly agreed that Phillips withdraw his opposition to, and instead support, the acceptance of the separate settlement of the actions upon terms favorable to Kirby and against the interests of Alleghany; that in return for his support Phillips was to receive personal benefits, including a position of prominence as a director or officer of Alleghany or Investors Diversified Services, Inc., a corporation controlled by Alleghany, and also employment as a consultant by either company at a substantial salary; finally, that in execution of the conspiracy, Phillips, by concealing the true facts, induced certain of the stockholder plaintiffs to agree to the Kirby settlement.

In short, and bluntly put, it is charged that for a price, Phillips sold out to Kirby and betrayed the interests of those he purported to represent, in advocating the acceptance of a separate settlement with Kirby for $1,100,000 when he knew the latter's liability in the lawsuits had been evaluated at $35,000,000, and that the sum of $1,100,000 was considerably less than Kirby would have had to pay in settlement except for the alleged corrupt conduct; that the conspiracy encompassed the lifting of the injunction of this Court, as well as the entry of an order of dismissal as to Kirby, which were achieved by the concealment of his alleged duplicitous conduct from both Courts.

The second cause of action charges the fulfillment of the alleged corrupt agreement; it sets forth that Kirby, by virtue of his effective working control of Alleghany, caused the election of Phillips as a member of the Board of Directors of Investors Diversified Services, Inc., and also as chairman of the Finance and Law Committee of that company at a salary of $2,500 per month. Plaintiffs seek removal of Phillips from these positions, repayment of his salary and compensation, and an accounting from Kirby, Ireland and Phillips.

Against this background of events and pleading, we consider the defendant's motions.

Rule 11, upon which the first branch of the defendant's motion is based, provides:

---

7. See Breswick & Co. v. United States, D.C.S.D.N.Y.1955, 134 F.Supp. 132; same case, D.C.S.D.N.Y.1955, 138 F. Supp. 123, reversed sub nom., Alleghany Corp. v. Breswick & Co., 1957, 353 U.S. 151, 77 S.Ct. 763, 1 L.Ed.2d 726; same case, D.C.S.D.N.Y.1957, 156 F.Supp. 227, reversed per curiam sub nom., Alleghany Corp. v. Breswick & Co., 1958, 355 U.S. 415, 78 S.Ct. 421, 2 L.Ed.2d 374; same case, D.C.S.D.N.Y.1958, 160 F.Supp. 754.

"Every pleading of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, * * *. The signature of an attorney constitutes a certificate by him that he has read the pleading; that to the best of his knowledge, information, and belief there is good ground to support it; * * *. If a pleading * * * is signed with intent to defeat the purpose of this rule, it may be stricken as sham and false * * *. For a wilful violation of this rule, an attorney may be subjected to appropriate disciplinary action."

The complaint is signed by a partner of the attorneys representing the plaintiffs and is verified by John D. Murchison, one of the plaintiffs, pursuant to Rule 23(b) of the Federal Rules of Civil Procedure. The defendant by his motion directly challenges the certification. He charges not only that the attesting attorney, but his firm, and co-counsel herein who represented the Murchisons in the prior derivative actions, violated Rule 11 in that (a) they permitted Murchison to make a false verification of the complaint, and (b) one of them certified, contrary to the fact, that to the best of his knowledge, information and belief there was good ground to support the complaint.

To sustain these serious accusations, the defendant, in large measure, relies upon the testimony given by the plaintiff, John D. Murchison, upon his pretrial deposition;[8] also upon defendant's own version of various matters, much of which is in denial of the plaintiff's charges and is of an argumentative, rather than a factual, nature.

The defendant practically dissected every material allegation of the complaint, most of which were alleged upon information and belief, by questioning Murchison as to his personal knowledge of the facts or events to support the particular charge. In each instance, where Murchison testified as to lack of personal knowledge of a specific allegation, the defendant has seized upon the answer to charge that his attorneys and counsel permitted him, to use defendant's typical expression, "to make a false affidavit when he alleged paragraph 41 upon 'information,' the falsity of which paragraph they could have ascertained for themselves had they properly discharged their duty as attorneys by appropriate inquiry of Murchison."

The defendant's position presupposes that a plaintiff asserting a claim must have personal knowledge of the basic facts upon which he predicates his suit. What was said by this Court in another connection has some relevancy to the contention here made with respect to the verification by the plaintiff:

"No rule or authority has been cited which requires that in actions where there are multiple plaintiffs each must verify the complaint, or that each plaintiff know the precise details upon which a legal claim of mismanagement by corporate trustees rests, or that he be informed in haec verba of the allegations of the complaint filed pursuant to express authority granted to the attorney."[9]

■ Obviously there are instances where the facts to support a charge necessarily come from sources other than the litigant, and this is particularly true in conspiracy cases. It is common knowledge that a conspiracy is rarely established by direct evidence. Rather it is usually proved by indirect or circumstantial evidence, and the acts and conduct of the alleged co-conspirators from

---

8. At the time of the present motion, although 1800 pages of testimony had been taken, the deposition had not been concluded.

9. Hoover v. Allen, D.C.S.D.N.Y.1960, 180 F.Supp. 263, 265.

which the existence of the alleged conspiracy reasonably may be inferred. To require a plaintiff charging a conspiracy to have personal knowledge of essential evidence necessary to sustain the allegations of his complaint would, in most instances, debar the maintenance of the action.[10]

Completely disregarded by the defendant is Murchison's testimony that the principal source of his knowledge of the allegations of the complaint was his attorneys and counsel, including reports submitted by them to him.[11] Finally, and most important, since the basic question is whether the attorneys in good faith believed there was good ground to support the charges, there is the positive, unequivocal statement by the attesting attorney that before the commencement of the action he and his associates intensively investigated the facts upon which the complaint is based; that during his entire career as a lawyer he had never "spent greater time assuring myself of the existence of direct proof of the essential allegations of the complaint as I did prior to its signing. I not only assure this Court that I knew of 'good ground' to support this complaint when I signed it, but I am convinced that the Kirby-Ireland-Phillips

conspiracy to defraud this Court will be proved."[12]

■ A pleading should be stricken only when it appears beyond peradventure that it is sham and false and that its allegations are devoid of factual basis;[13] otherwise it would deprive a party of his right to a trial of the issues posed by his complaint—it would mean trial by affidavits.[14]

■ Upon the argumentative matter here presented, there is no basis for granting the requested relief under Rule 11, and accordingly that branch of the motion is denied.

■ We now turn to a consideration of the defendant's alternative motion for judgment upon the pleadings. Since affidavits were also submitted in support of this branch of the motion, it is to be treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.[15]

A key issue in this suit is whether Phillips achieved, as charged in the complaint, substantial dominance and control over the Breswick action or any objecting stockholder in the Zenn litigation. Equally fundamental is the question of whether he was ever cast in the role of a fiduciary toward stockholder plaintiffs and

10. Rather significantly, when Murchison was questioned as to the source of the information upon which he relied when he swore to the allegations of paragraph 41 of the complaint, which charges the conspiracy, he answered, somewhat along the lines of colloquial instructions to jurors, that as a rule conspirators do not put agreements in writing or make them a matter of record—that much is left to unexpressed understanding. He testified, " * * * My information is not direct. I have asked my lawyers to see if it is possible to make a case out of this thing, and they tell me that they have. * .* I wasn't there, I wasn't listening to them, nobody has given me any written agreements about this deal, so my information is general." Deposition, John D. Murchison, pp. 165–68, Nov. 7, 1960.

11. Deposition, John D. Murchison, pp. 1348–49, Nov. 7, 1960.

12. While co-counsel for the plaintiffs did not sign the complaint, he too submits an affidavit of similar import.

13. E. g., American Automobile Ass'n v. Rothman, D.C.E.D.N.Y.1952, 104 F.Supp. 655.

14. See Lau Ah Yew v. Dulles, 9 Cir., 1956, 236 F.2d 415 (per curiam); United States v. Long, D.C.D.Neb.1950, 10 F.R.D. 443.

15. Fed.R.Civ.P. 12(c). Cf. Appalachian Power Co. v. American Institute of Certified Public Accountants, 2 Cir., 1959, 268 F.2d 844 (per curiam), certiorari denied, 1959, 361 U.S. 887, 80 S.Ct. 158, 4 L.Ed.2d 121; Hirsch v. Archer-Daniels-Midland Co., 2 Cir., 1958, 258 F.2d 44; Mosley v. George A. Fuller Co., 5 Cir., 1957, 250 F.2d 686.

to Alleghany. It is conceded that during the course of the litigation Phillips was financial consultant and adviser to the Breswick group attorneys. However, they and he vehemently deny that at any time he dominated and controlled any aspect of either the Breswick or Zenn actions and maintain that the limit of his authority was to "explore the range of settlement." The attorneys state that when Phillips' efforts indicated a possibility of an acceptable settlement, they thereafter negotiated and concluded the agreement with Kirby on the basis of their independent judgment. Indeed, they contend that Phillips sought to persuade them to press for more than the $1,100,000 offered by Kirby. They also brand as false any suggestion that they were in any respect under Phillips' domination or subject to his control.

On the other hand, counsel who represented the Murchisons swears, based upon his observation and discussions during the course of the litigation, that Phillips, who headed the "Phillips group," which included the Breswick group and their attorneys, did have dominance and control as charged in the complaint, and specifies instances which he contends support his conclusion. He states that the Breswick attorneys made it abundantly clear that they were without authority to conclude any settlement absent the express approval of Phillips.

The record establishes that Phillips, apart from acting as consultant to the Breswick group, was an active participant in various phases of the litigation. The minutes of the hearing on the application by the Breswick group for approval of the Kirby settlement con-

tains a statement that Phillips, not an attorney, was a member of "the drafting team" that prepared the stipulation of settlement.[16]

█ A determination of the true status of Phillips brings into play all the circumstances attendant upon the exploration, negotiation and consummation of the settlement here under attack. Whether Phillips, by reason of the degree and extent of his varied activities, occupied a dominant and controlling position in the litigation and the settlement negotiations, whether he was under a fiduciary duty to Alleghany and its stockholders, and, if so, whether he breached this duty, present issues of fact which cannot and should not be decided on affidavits. The fact that Phillips and the Breswick attorneys vehemently deny and denounce the charge does not foreclose consideration of the claim any more than the counterassertion by Murchison's attorney that such is the fact establishes its verity. The contradiction emphasizes that determination upon affidavits of this, as well as other obvious issues, is foreclosed under well known authorities in this Circuit;[17] particularly so where, in large measure, the basic evidence necessary to establish plaintiffs' fundamental claim, if it exists at all, is within the personal knowledge of the defendants.[18]

The case bristles with issues of fact which require the denial of the defendant's motion for summary judgment.

The Court has considered each and every contention urged in support of the defendant's motions, but finds they do not require a different result. It has disregarded many irrelevant matters ad-

16. Minutes, Breswick & Co. v. Briggs, Civ. No. 98–371, p. 55, S.D.N.Y., Dec. 22, 1960.

17. See Subin v. Goldsmith, 2 Cir., 224 F.2d 753, certiorari denied, 1955, 350 U.S. 883, 76 S.Ct. 136, 100 L.Ed. 779; Arnstein v. Porter, 2 Cir., 1946, 154 F.2d

464, 471; Doehler Metal Furniture Co. v. United States, 2 Cir., 1945, 149 F.2d 130, 135.

18. The examination of the defendants under a court order has been deferred until the completion of the plaintiffs' examination.

vanced by the contending parties which account, in large degree, for the bulk of the record on this application.

The disposition herein constitutes an order. No settlement is necessary.