Yolanda LOYA, Max Anthony, a minor, by his next friend, Mark Rosenbaum, Gerald Duarte de A, a minor, by his next friend, Mark Rosenbaum, Velia Limon, Santos Castellon, Toribio Cortez Martinez, Maria Eugenia Sanches, Jose Cardenas Hidalgo, Mario Rene Amado-Perez, Rogelio Duenas, Rodrigo Ramirez-Lemus, on behalf of themselves and all other persons similarly situated, Plaintiffs-Appellants,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Donald T. Williams, Acting Director, Los Angeles District, Immigration and Naturalization Service, Elliot L. Richardson, Attorney General of the United States, James F. Greene, Acting Commissioner, Immigration and Naturalization Service, Carl R. Fisher, Investigator, Immigration and Naturalization Service, Defendants-Appellees.

No. 75–2826.

United States Court of Appeals, Ninth Circuit.

Oct. 13, 1978.

Fred Okrand (argued), Los Angeles, Cal., for plaintiffs-appellants.

Barry J. Trilling, Asst. U. S. Atty., Los Angeles, Cal., for defendants-appellees.

Before CHOY and ANDERSON, Circuit Judges, and PALMIERI,* District Judge.

CHOY, Circuit Judge:

### I. *Background*

On May 23, 1973, the Immigration and Naturalization Service (INS) instituted an "augmented" program in the Los Angeles area to apprehend illegal aliens with a significantly increased number of officers. The program was of limited duration, ending on either June 20 or June 22, 1973. On June 22, 1973, Loya and several others of Mexican ancestry filed suit in the district court against the INS and named INS officials, alleging that INS officers had used illegal "dragnet" tactics and had stopped and detained over 11,000 persons solely on the basis of "Latin-American" appearance. Plaintiffs moved for certification of the cause as a class action for all those of Latin-American appearance. They also sought injunctive relief against alleged violations of their constitutional and statutory rights by INS officers, an order that INS return to the United States those plaintiffs allegedly deported unlawfully, and a declaratory judgment regarding the alleged unlawful INS behavior. Finally, they sought damages for the named plaintiffs and attorneys' fees.

The district court denied plaintiffs' motion for a temporary restraining order because the "augmented" program had ceased. This denial was not appealed to this Court. The denial of a preliminary injunction also was not appealed to this Court.

---

* The Honorable Edmund L. Palmieri, Senior United States District Judge, the Southern District of New York, sitting by designation.

The district court refused to certify the suit as a class action. The court also granted in part defendants' motion for summary judgment. The court held that plaintiffs were not entitled to injunctive relief as a matter of law.

From these last two rulings plaintiffs appeal. We conclude that this Court lacks jurisdiction to hear the appeal as to class certification, but that the partial summary judgment decision is appealable; so we affirm in part and reverse in part.

## II. *Appealability*

### A. *Injunctive Relief*

■ The district court's granting of partial summary judgment holding injunctive relief unavailable is appealable under 28 U.S.C. § 1292(a)(1).

Section 1292(a)(1) makes appealable "[i]nterlocutory orders of the district courts . . . granting, continuing, modifying, refusing or dissolving injunctions . . ." This Court has "interpreted section 1292(a) as allowing appeals from orders either narrowing the range of activity about which plaintiffs seeking an injunction may complain . . . or restricting the breadth of relief to which such plaintiffs might otherwise be entitled." *Waters v. Heublein, Inc.*, 547 F.2d 466, 468 (9th Cir. 1976), *cert. denied*, 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1100 (1977). *See Spangler v. United States*, 415 F.2d 1242, 1246 (9th Cir. 1969).

The district court below granted partial summary judgment, denying injunctive relief as to all claims in the case. By making injunctive relief unavailable, the decision restricted the breadth of relief which plaintiffs might obtain. The order is thus appealable under § 1292(a)(1). *See Gardner v. Westinghouse Broadcasting Co.*, —— U.S. ——, ——, 98 S.Ct. 2451, 57 L.Ed.2d 364 (1978); *Safe Flight Instrument Corp. v. McDonnell-Douglas Corp.*, 482 F.2d 1086, 1093 (9th Cir.), *cert. denied*, 414 U.S. 1113, 94 S.Ct. 843, 38 L.Ed.2d 740 (1973); *Talon, Inc. v. Union Slide Fasteners, Inc.*, 249 F.2d 308, 308 (9th Cir. 1957).

### B. *Class Certification*

■ The denial of class certification is not appealable.

Denial of class certification constitutes an interlocutory decision, unappealable unless it falls within one of the exceptions to the final judgment rule of 28 U.S.C. § 1291. *Coopers & Lybrand v. Livesay*, —— U.S. ——, ——, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978). No such exception applies here.

First, the order may not be appealed under the "collateral order" exception to the final judgment rule enunciated in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546–47, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), allowing appeals from interlocutory orders collateral to and independent of the issues remaining to be litigated. Recently the Supreme Court held that "[a]n order passing on a request for class certification does not fall in that category." *Coopers & Lybrand*, —— U.S. at ——, 98 S.Ct. at 2458. The Court noted that such orders can be revised by the district court, involve issues intertwined with the merits, and can be reviewed effectively after final judgment. *Id.*

Second, the order is not appealable under the "death knell" doctrine. Many of the Courts of Appeals, including this Court, have held denials of class certification appealable when as a practical matter the litigants would not proceed with a purely individual action. The courts have reasoned that because the denial of class certification constituted the "death knell" for the action, the denial had the effect of a final decision and was therefore appealable under § 1291. *See, e. g., Share v. Air Properties G. Inc.*, 538 F.2d 279, 281–83 (9th Cir.), *cert. denied*, 429 U.S. 923, 97 S.Ct. 321, 50 L.Ed.2d 290 (1976); *Eisen v. Carlisle & Jacquelin*, 370 F.2d 119, 121 (2d Cir. 1966), *cert. denied*, 386 U.S. 1035, 87 S.Ct. 1487, 18 L.Ed.2d 598 (1967).

However, *Coopers & Lybrand* sounded the death knell of the death knell doctrine. The district court had denied plaintiff class certification in a suit alleging securities law violations. The Supreme Court concluded

that denial of class certification was not appealable under the final judgment rule of § 1291, even if the order meant the end of the litigation. The Court noted that the death knell doctrine required the Courts of Appeals to make predictions of plaintiff behavior which wasted judicial resources, contravened the congressional policy of limited interlocutory appeals as embodied in § 1292(b), and involved policy questions more appropriate for Congress. The Supreme Court thus concluded that "the fact that an interlocutory order may induce a party to abandon his claim before final judgment is not a sufficient reason for considering it a 'final decision' within the meaning of § 1291." —— U.S. at ——, 98 S.Ct. at 2462 (footnote omitted).

Finally, appellants ask us to adopt the holding of the Seventh Circuit in *Jenkins v. Blue Cross Mutual Hospital Insurance, Inc.*, 538 F.2d 164 (7th Cir.), *cert. denied*, 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976).[1] The *Jenkins* plaintiff sought class certification in a suit alleging racial and sex discrimination. The district court denied the class certification and later denied plaintiff's motion for a preliminary injunction. The Seventh Circuit found the class certification denial appealable under § 1292(a)(1):

> Certainly in this case there is an order denying a preliminary injunction, which would permit review under the terms of § 1292(a)(1). Further, there can be no doubt that the district court's earlier refusal to certify the suit as a class action *directly controlled* its subsequent decision on the requested preliminary injunction.
>
> Because the class action determination of the district court *directly controlled*

the subsequent disposition of the request for a preliminary injunction, we believe it, too, is reviewable under 28 U.S.C. § 1292(a)(1).

522 F.2d at 1237–38 (footnote omitted; emphasis added).[2]

We need not decide now if we would adopt the *Jenkins* holding. Under its own terms it cannot apply to the present case. In *Jenkins* the failure to certify the class "directly controlled" the later decision to refuse a preliminary injunction. In the instant case, the district court granted partial summary judgment denying injunctive relief for reasons independent of whether the suit was maintained individually or as a class action.[3] The decision not to certify the class, therefore, in no way controlled the decision as to injunctive relief.

The present order denying class certification does not fall within any exception to the final judgment rule. The appeal from denial of class certification must be dismissed for lack of appellate jurisdiction.

### III. *Summary Judgment on Injunctive Relief*

■ In partially granting the INS's motion for summary judgment, the trial court held that injunctive relief was not available as a matter of law. The court found that granting injunctive relief would bypass administrative procedures provided for determining the status of resident aliens, contrary to congressional intent.

Summary judgment may be granted " 'only where there is no genuine issue of any material fact or where viewing the evidence . . . in the light most favor-

---

1. The Seventh Circuit first embraced the *Jenkins* doctrine in a panel decision, *Jenkins v. Blue Cross Mutual Hospital Insurance, Inc.*, 522 F.2d 1235 (7th Cir. 1975). A rehearing en banc was granted. The full court adopted the panel's analysis as to appealability. *See* 538 F.2d at 166 n.2.

2. In a footnote the court explained the very close nexus between the class certification and preliminary injunction decisions:

> The district court summarily denied the plaintiff's motion for preliminary injunction

. . . .. We believe the reason the court dealt with the motion in the manner it did was because the plaintiff's only arguments in favor of the motion were advanced on behalf of the class which the district court had months before struck from the suit; indeed, the only allegations of irreparable injury concerned the injury to a class the court no longer viewed as part of the suit.
522 F.2d at 1238 n.5.

3. *See* discussion of the merits *infra*.

able to the adverse party, the movant is clearly entitled to prevail as a matter of law.'" *Caplan v. Roberts*, 506 F.2d 1039, 1042 (9th Cir. 1974). *See* Fed.R.Civ.P. 56.

Given the factual dispute as to the propriety of INS behavior, partial summary judgment was appropriate only if plaintiffs could not receive injunctive relief as a matter of law. Because injunctive relief may be available as to future INS conduct, we reverse the district court's ruling on this issue. We affirm the district court's decision as to past conduct and return of deported aliens.

### A. Threatened Future INS Misconduct

Injunctive relief is designed to deter future misdeeds, not to punish for past conduct. *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 62, 95 S.Ct. 2069, 45 L.Ed.2d 12 (1975); *Dombrowski v. Pfister*, 380 U.S. 479, 485, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). As a matter of law, therefore, plaintiffs could not obtain an injunction as to alleged past violations of their rights.

This Court has not yet ruled on the availability of injunctive relief against threatened future INS behavior. The Seventh Circuit, however, has upheld a preliminary injunction ordering INS agents to comply with constitutional standards in future conduct. *Illinois Migrant Council v. Pilliod*, 540 F.2d 1062, 1071 (7th Cir. 1976), *modified en banc*, 548 F.2d 715 (7th Cir. 1977).[4] Other courts have also approved injunctive relief against law enforcement officials when there is a serious threat of future misconduct. *See, e. g., Allee v. Medrano*, 416 U.S. 802, 815, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974); *Hague v. Committee for Industrial Organization*, 307 U.S. 496, 517, 59 S.Ct. 954, 83 L.Ed. 1423 (1939); *Lankford v. Gelston*, 364 F.2d 197, 206 (4th Cir. 1966).

Should the requisite threatened harm be adequately proved—giving due consideration to the prudential limitations on the exercise of the court's power to grant equitable relief, *see O'Shea v. Littleton*, 414 U.S. 488, 499–504, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); *Illinois Migrant Council*, 540 F.2d at 1072–75 & n.4 (dissenting opinion); *see also Warth v. Seldin*, 422 U.S. 490, 498–501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)— we would be inclined to approve injunctive relief against future INS behavior. Given the barren record in the present case, we cannot say that as a matter of law injunctive relief could not be granted. Accordingly, we reverse the district court's granting of partial summary judgment denying injunctive relief against allegedly threatened future INS violations of constitutional and statutory rights. We express no opinion on the merits of plaintiffs' contentions on this issue.

### B. Return of Deported Aliens

 We affirm the granting of partial summary judgment denying injunctive relief ordering the return of deported aliens. We agree with the district court that the courts should not ignore the congressional intent of locating alien status disputes in administrative agencies and not the federal courts. *See Foti v. INS*, 375 U.S. 217, 225–26, 84 S.Ct. 306, 11 L.Ed.2d 281 (1963); 8 U.S.C. § 1105a (1976). Injunctive relief mandating the return of alien plaintiffs would interject the district court into this administrative process. Moreover, it would contravene the important policy requiring exhaustion of administrative procedures. *See Kassab v. INS*, 322 F.2d 824, 826 (9th Cir. 1963), *cert. denied*, 376 U.S. 910, 84 S.Ct. 665, 11 L.Ed.2d 608 (1964); *Bustos-Ovalle v. Landon*, 225 F.2d 878, 880 (9th Cir. 1955). For these reasons, such injunctive relief is unavailable as a matter of law.

AFFIRMED in part and REVERSED in part.

---

**4.** The Seventh Circuit sitting en banc affirmed the issuance of the injunction by an equally divided court. The court en banc also vacated a portion of the injunction issued by the district court.