Stephen H. MARKS, Appellant,

v.

SAN FRANCISCO REAL ESTATE
BOARD et al., Appellees.

No. 77–2987.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 15, 1979.

Decided Sept. 11, 1980.

Francis O. Scarpulla, San Francisco, Cal., for appellant.

Ronald D. Rattner, M. Laurence Popofsky, San Francisco, Cal., on brief; Moses Lasky, Lasky, Haas, Cohler & Munter, San Francisco, Cal., for appellees.

Before SNEED and KENNEDY, Circuit Judges, and LARSON,* Senior District Judge.

LARSON, Senior District Judge.

I.

This is an antitrust action which alleges price-fixing of real estate commission rates in Marin County, California. The initial complaint was filed on February 24, 1971.

---

* The Honorable Earl R. Larson, United States Senior District Judge for the District of Minnesota, sitting by designation.

The suit was certified as a class action on April 10, 1972. Plaintiff commenced discovery and began compiling a list of class members, which was completed on September 20, 1974, after considerable delay. On May 13, 1974, the defendants had moved for an order decertifying the class and dismissing the action for lack of prosecution. The district court, relying on this Court's decision in *Kline v. Coldwell Banker & Co.*, 508 F.2d 226 (9th Cir. 1974), *cert. denied*, 421 U.S. 963, 95 S.Ct. 1950, 44 L.Ed.2d 449 (1975), decertified the class on February 24, 1975; but did not rule on the motion to dismiss. *Marks v. San Francisco Real Estate Board*, 69 F.R.D. 353 (N.D.Cal.1975).

Plaintiff subsequently undertook two appeals of the class decertification order. The first was pursuant to 28 U.S.C. § 1292(b), which this Court refused to accept because it believed the order was reviewable under 28 U.S.C. § 1291 as a final judgment under the "death knell" doctrine. Plaintiff's § 1291 appeal was heard and the case was remanded to the district court for an evidentiary hearing on whether the death knell had in fact sounded. *Hooley v. Red Carpet Real Estate*, 549 F.2d 643 (9th Cir. 1977). After plaintiff's petition for rehearing or rehearing en banc was denied on March 23, 1977, he decided not to petition the Supreme Court for certiorari. On July 12, 1977, plaintiff moved for a pretrial conference in the district court. During the period while the class decertification order was on appeal, the case had been assigned to a different trial judge. The pretrial conference was held on August 12, 1977, at which time this judge dismissed the action.

■ The proper measure for review of the dismissal is whether the court below abused its discretion. *Link v. Wabash Railroad Co.*, 370 U.S. 626, 633, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962); *Huey v. Teledyne, Inc.*, 608 F.2d 1234 (9th Cir. 1979); *Citizens Utilities Co. v. American Tel. & Tel. Co.*, 595 F.2d 1171, 1174 (9th Cir. 1979); *Anderson v. Air West Inc.*, 542 F.2d 522, 524 (9th Cir. 1976). In the August 16, 1977, written order embodying the judgment of dismissal the trial judge stated that it was based on failure to prosecute.

■ However, examination of the transcript of the August 12 pretrial conference reveals that a major reason for the dismissal was merely that the case had been pending too long. When defendants suggested that it was a stale and aged case, the judge agreed, remarking that:

"I think this is a stale case. I think it's a stale case. I am not going to set a pretrial hearing. I am not going to consider reconsideration (of the class decertification) in the case and I think what I am going to do is dismiss the action with prejudice."

Later, he continued:

"There has been enough time in the case. * * * I am satisfied that you've had all the opportunity that a litigant ought to have."

This is not an acceptable reason for the involuntary dismissal of an action. *Cherry v. Brown-Frazier-Whitney*, 548 F.2d 965, 969 (D.C. Cir. 1976); 5 Moore's Federal Practice ¶ 41.11[2] (2d ed. 1979).

■ Defendants contend that the necessary failure to prosecute is present, particularly in the delay in preparing the class list. Even if this claim were true, an earlier lack of diligence is not grounds for dismissal when the plaintiff is currently displaying diligence. *Cristanelli v. United States Lines*, 74 F.R.D. 590, 593 (C.D.Cal. 1977). However, the record shows that plaintiff has been assiduous in his prosecution of this action. He has compiled a list of some 13,000 transactions which provides the names of the class members. In the course of discovery to compile this list, he was hindered by at least one instance of intentional document destruction by the defendants. Plaintiff unflaggingly pursued his appeal of the class decertification order. He requested the pretrial conference, a demonstration that he was ready and eager to proceed to trial. In fact, plaintiff claims to have been prepared for trial since late 1974.

The trial judge also seemed to feel that plaintiff had to go ahead and attempt to

make a "death knell" showing and that he could not now choose to proceed to trial on the individual claim. It is apparent that plaintiff was trapped in the prevailing confusion over the requirements for a death knell appeal. To obtain review of the class certification order it was necessary for plaintiff to claim that neither he nor any other member of the class could continue the action individually. Now that *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978), has eliminated death knell appeals, plaintiff must be willing to proceed to trial, albeit reluctantly, on his individual claim in order to obtain eventual review of the decertification order. This plaintiff was and is prepared for such a trial.

In the circumstances of this case, dismissal was an abuse of discretion. The judgment below is reversed and the action remanded for further proceedings.

## II.

Judges SNEED and KENNEDY concur in part I of this opinion. Part II represents my views alone.

I believe that the class decertification order can and should be reviewed now. A dismissal with prejudice is a final judgment. An appeal from a dismissal gives the Court of Appeals power to review all interlocutory orders in the case. *Sackett v. Beaman,* 399 F.2d 884, 889 (9th Cir. 1968); *Grabner v. Willys Motors, Inc.,* 282 F.2d 644, 646 (9th Cir. 1960). When the dismissal is found to be improper, however, there is no longer a final judgment supporting review of the interlocutory orders. *See Blake v. City of Los Angeles,* 595 F.2d 1367, 1386 (9th Cir. 1979). This paradoxical situation does not necessarily deprive the Court of the power to review a particular interlocutory order. Review in this context would not always evade the final judgment rule nor would it contravene the policies behind the rule.

For several years courts have struggled to establish principles governing appeals of class certifications and decertifications. Recently, in *Coopers & Lybrand v. Livesay, supra,* the Supreme Court placed narrow limits on review of these orders. *See Eluska v. Andrus,* 587 F.2d 996, 1000 (9th Cir. 1978); *Loya v. Immigration & Naturalization Service,* 583 F.2d 1110, 1112 (9th Cir. 1978). The rationales enunciated in these decisions are the usual policies against piecemeal review. Courts are rightly concerned about the delay, harassment, and waste of judicial time which could result if every interlocutory order could be appealed. *See Cobbledick v. United States,* 309 U.S. 323, 325, 60 S.Ct. 540, 541, 84 L.Ed. 783 (1940); *Blake v. City of Los Angeles, supra; Blackie v. Barrack,* 524 F.2d 891, 895 (9th Cir. 1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976).

There are competing considerations. Forcing the parties to proceed on the basis of an erroneous trial court order can result in needless cost and misspent judicial energy. *See Gillespie v. United States Steel Corp.,* 379 U.S. 148, 152–53, 85 S.Ct. 308, 310–11, 13 L.Ed.2d 199 (1964); *Curlott v. Campbell,* 598 F.2d 1175, 1179 (9th Cir. 1979) (Sneed, J.) (courts should avoid "enthroning technicality," thereby "usurp(ing) the claims of justice"); *Wescott v. Impresas Armadoras, S. A. Panama,* 564 F.2d 875, 880–81 (9th Cir. 1977); 9 Moore's Federal Practice ¶ 110.07 (2d ed. 1975); *Id.* at ¶ 110.12 ("once an appeal has been taken in good faith, and the attendant expense of time, money and manpower has been suffered, a court of appeals is not powerless to prevent further useless expenditure.")

A doctrine of pendant appellate review has developed which to some extent harmonizes these opposing policies. Under this doctrine, if a court properly undertakes review of an interlocutory order, it may review other orders in the case, even though those orders alone would not be appealable. *See Marcera v. Chinlund,* 595 F.2d 1231, 1236 n. 8 (2d Cir.), *vacated and remanded on other grnds.,* 442 U.S. 915, 99 S.Ct. 2833, 61 L.Ed.2d 281 (1979); *Merrill-National Lab., Inc. v. Zenith Lab., Inc.,* 579 F.2d 786, 791 (3d Cir. 1978); *Yamamoto v. Omiya,* 564 F.2d 1319, 1325 n. 11 (9th Cir. 1977); *Genosick v. Richmond Unified School Dist.,* 479 F.2d 482 (9th Cir. 1973). The reasons for

the doctrine can be extended to this situation. There is no question that the dismissal is appealable. Judicial efficiency would clearly be aided by review of the class decertification order now. Otherwise, the parties will be forced to go through trial on the individual claim and then, regardless of the outcome, bear the cost of another appeal, and possibly additional trial time on class issues. This Court need not be apprehensive about interfering with the trial judge's discretion to change a class status order. There appears to be no chance that the class will be re-certified now.

This case is distinguishable from *Huey v. Teledyne, supra.* In that case the dismissal was found to be proper and there was a strong suggestion that plaintiffs had sought dismissal to circumvent the policy against piecemeal appeals and obtain review of the order denying class certification. *See also Sullivan v. Pacific Indem. Co.,* 566 F.2d 444, 445 (3d Cir. 1977); *Marshall v. Sielaff,* 492 F.2d 917, 919 (3d Cir. 1974). Here it is apparent that plaintiff did not wish to have the case dismissed, and that he was not manipulating the court to obtain review.

I further believe that decertification of the class in this suit was based on erroneous legal reasoning and was an abuse of discretion. Normally trial judges are given wide latitude in deciding whether a particular suit should proceed as a class action. The "abuse of discretion" standard is extremely imprecise and lends itself to a variety of meanings. When an issue involves peculiarly subjective determinations, it is desirable and necessary to give a trial judge's decision the broadest possible respect. When, however, there are numerous objective factors which may be used to measure the correctness of a ruling, the reviewing court can and should be less deferential to the court below. In addition, when, as here, the decision below largely rests on an interpretation of prior case law, greater scrutiny is warranted to ensure that the judge has not misunderstood that prior law. Finally, no one would dispute the particular importance of class determinations. A lawsuit often rises or falls on whether it may be maintained as a class action. Therefore,

painstaking study should be given to these rulings. *See generally* Bernstein & Berger, *Recent Developments in Private Antitrust Class Actions,* 24 N.Y.L.Sch.L.Rev. 819, 853–54 (1979).

The trial judge had originally certified a class, *Marks v. San Francisco Real Estate Board,* [1972] Trade Cases (CCH) ¶ 74,130 (N.D.Cal. April 10, 1972), and narrowed it to what he believed was a manageable action. His decertification order was rendered because "the facts in *Kline* are nearly identical to those in the case at bar," and "the present case is controlled by *Kline* . . . *Kline* requires that this case not proceed as a class action." *Marks v. San Francisco Real Estate Board,* 69 F.R.D. 353, 354–55 (N.D.Cal.1975). The two major concerns transferred from *Kline v. Coldwell, Banker & Co., supra,* were the unfairness of exposing defendants to enormous vicarious liabilities and the problems of proving individual damages. These problems had led this Court to conclude in *Kline* that a class action would not be a superior method of adjudication.

The trial court was wrong in its finding that the facts here are identical to those in *Kline,* and that therefore *Kline* was controlling. The factual differences in this case are pertinent to the rationales for denying class status in *Kline.* In *Kline* there was a class of 2,000 defendants, and much trial time would have been needed to prove that each was connected to the price fixing conspiracy. Here there are at most 23 defendants.

The potential liability of the defendants, which so concerned the *Kline* court, is greatly reduced in this case. Only 13,000 transactions are involved, with a maximum possible treble damage recovery of $18,000,-000. Although this is a large amount to be imposed on one defendant, it is not so great as to "shock the conscience." Courts are not without the power to take measures to limit each defendant's liability. Contribution among defendants is a possibility. *See Wilson P. Abraham Construction Corp. v. Texas Indus., Inc.,* 604 F.2d 897 (5th Cir.

1979) (not allowing contribution); *Professional Beauty Supply, Inc. v. National Beauty Supply, Inc.*, 594 F.2d 1179 (8th Cir. 1979) (allowing contribution). A court could enter orders limiting each defendant's potential liability to a maximum of three times its actual overcharges.

It is unfortunate that *Kline's* solicitude for defendants is not matched with concern over the losses plaintiffs may have suffered. If in fact the defendants were liable for $6,000,000 in overcharges, this would reflect $6,000,000 paid out by consumers that would not have been expended in the absence of price-fixing. It seems strange that so gross a violation of the antitrust laws could actually be twisted to excuse the wrongdoers from liability. Congress enacted Rule 23 to provide a method of redress for violations just such as these, and that purpose is not served by making it nearly impossible for class actions to be certified. *See Reiter v. Sonotone*, 442 U.S. 330, 343, 99 S.Ct. 2326, 2333, 60 L.Ed.2d 931 (1979) (the problems of class actions are not a reason to eliminate them).

A class involving 13,000 transactions and 23 defendants is manageable. The trial court apparently believed so when it first certified the class. The fact of injury may be readily proved on a classwide basis when price fixing of commissions is claimed. It is a fairly simple matter to prove that under competitive conditions the commission would or would not have been lower. Proof of individual damage amounts would also be a relatively easy task. *See Windham v. American Brands, Inc.*, 565 F.2d 59, 68 and n. 28 (4th Cir. 1977), *cert. denied*, 435 U.S. 968, 98 S.Ct. 1605, 56 L.Ed.2d 58 (1978). That proof of damages is an individual question has rarely prevented courts from certifying antitrust classes. In fact, most authorities hold that the class action is a good vehicle for trial of per se antitrust violations, especially price fixing claims. *See In re Fine Paper Antitrust Litigation*, 82 F.R.D. 143, 150–55 (E.D.Pa.1979); *In re Corrugated Container Antitrust Litigation*, 80 F.R.D. 244, 248 (S.D.Tex.1978); 3B Moore's Federal Practice ¶ 23.46 (2d ed. 1979); Bernstein & Berger, *supra*, at 834.

And a number of charts have allowed class actions to recover real estate broker overcharges. *See Nichols v. Mobile Co. Bd. of Realtors*, [1978–2] Trade Cases (CCH) ¶ 62,-200 (S.D.Ala.1978); *McKerall v. Huntsville Real Estate Bd.*, [1976–1] Trade Cases (CCH) ¶ 60,709 (N.D.Ala.1976); *Hill v. Art Rice Realty Co.*, [1974–2] Trade Cases (CCH) ¶ 75,364 (N.D.Ala.1974); *Forbes v. Greater Minneapolis Area Bd. of Realtors*, 61 F.R.D. 416 (D.Minn.1973). *But see Dafforn v. Rousseau Assoc., Inc.* [1976–2] Trade Cases (CCH) ¶ 61,219 (N.D.Ind.1976).

*Kline* should be found not controlling here and the case should be allowed to continue as a class action.

SNEED, Circuit Judge (concurring in the result):

I concur in the result reached by Judge Larson in Part I of his opinion. Plaintiff is entitled to pursue his individual claim and the dismissal by the district court was improper. There was no necessity that the plaintiff, following the remand in *Hooley v. Red Carpet Real Estate*, 549 F.2d 643 (9th Cir. 1977), continue his efforts to demonstrate that the "death knell" had sounded. Quite properly he could decide to pursue his individual claim only. As Judge Larson points out, *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978) compels that course. Plaintiff's attempt to do so should not have been thwarted by a dismissal.

Part II of Judge Larson's opinion undertakes a review of the district court's decertification of the class. To do so is premature. To hold otherwise would encourage efforts to secure dismissals following a decertification to obtain its interlocutory review contrary to the purpose of *Coopers & Lybrand v. Livesay, supra*. Distinguishing dismissals resulting from such efforts from those not so induced, as Judge Larson does in Part II of his opinion, constitutes the assumption by the appellate courts of an unnecessary task, requiring the probing for invariably partially concealed motives, for which they are not well suited.

Should the plaintiff establish liability in his individual action in this case, and assuming the class was improperly decertified, as Judge Larson would hold, our judgment to that effect on his appeal following his victory on his individual cause would enable him either to enter into meaningful settlement negotiations or to proceed to judgment on behalf of the class. It is true that Judge Larson's approach would expedite the resolution of the decertification issue; however, it is also true that its resolution prior to the establishment of liability would mainly serve to fix the pre-liability-determination settlement value of the case. To undertake to enable the fixing of this value at the cost of incurring the substantial risk of undermining *Coopers & Lybrand v. Livesay, supra* is unwise.

Finally, to undertake review of the decertification issue in this case is inconsistent with the policies expressed by this court in *Huey v. Teledyne, Inc.*, 608 F.2d 1234 (9th Cir., 1979) even though its precise holding does not control the disposition of this case.

Judge Kennedy is correct in suggesting that neither *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980), nor *Deposit Guaranty National Bank of Jackson, Mississippi v. Roper*, 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980), require a present review of the decertification issue. Here, contrary to the situation in *Geraghty* and *Roper*, we must assume that the plaintiff will pursue his individual claim notwithstanding its improper dismissal by the district court. Consideration by us of the decertification issue is not necessary to keep this case alive.

KENNEDY, Circuit Judge, concurring:

I concur in Part I of Judge Larson's opinion. As to Part II, I agree with Judge Sneed that it is inappropriate for us to review the merits of the order decertifying the class. I am not certain, however, that the subordinate arguments made by Judge Sneed support his position. It is most unlikely, in my view, that if we were to approve Judge Larson's approach, we would encourage efforts to secure dismissals following the decertification, even if that did occur in *Huey v. Teledyne, Inc.* It should be noted, moreover, that the settlement value of the case will be affected whichever way we rule on the appealability issue presented here.

■ I am in full agreement with Judge Sneed that it would be contrary to the purpose of *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978), to review the decertification order here. Furthermore, to do so would be contrary to our holding in *Blake v. City of Los Angeles*, 595 F.2d 1367 (9th Cir. 1979). In my view, that case is indistinguishable from the one before us. It is an adequate, independent ground for holding that we should not review the decertification order. Our decision in *Blake* survives the Supreme Court's opinion in *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 396, 407–408 (1980). In *Geraghty* the Court held it was appropriate for the Court of Appeals to review the merits of a district court's denial of class certification when the Court of Appeals reversed a summary judgment order and remanded the case for further proceedings. There, however, the propriety of class certification was intertwined with another issue in the case, which was whether the lawsuit was moot. Resolving the mootness issue entailed a determination affecting the certification question. It must be acknowledged that there is an implicit tension between *Coopers & Lybrand* and *Geraghty*. The tension makes the present case a close one. In my view, however, the Court in *Geraghty* did not intend to announce a general rule that appellate courts should review the merits of class certification or decertification questions in every case when an appealable judgment in the case is before it. In *Geraghty*, moreover, the district court's abuse of discretion in the class decertification was clear, and that is not the case here.