647 F.2d 18
 Fed. Sec. L. Rep. P 98,023, 8 Fed. R. Evid. Serv. 475
Pauline WEIL and Emanuel J. Weil, on Behalf of Themselves
and all Others Similarly Situated, Plaintiffs-Appellants,
v.
INVESTMENT/INDICATORS, RESEARCH AND MANAGEMENT, INC.,
Desmond W. Mitchell, Charles R. Schwab, Robert
Birkie, John Hossfeld, Marjorie A.
Wegner and Laurel Brook Farms,
Inc., Defendants-Appellees.
 CA No. 77-2754.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 12, 1980.
Decided June 1, 1981.
Rehearing and Rehearing En Banc Denied Aug. 28, 1981.
 
 Arthur W. Friedman, Devoe, Shadur & Krupp, Chicago, Ill., for plaintiffs-appellants.
 Reed H. Bement, George M. Carr, Carr, Smulyan & Hartman, John B. Bates, Jr., San Francisco, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of California.
 Before TRASK and WALLACE, Circuit Judges, and EAST,* District Judge.
 TRASK, Circuit Judge:
 
 
 1
 This case is before us on appeal from the district court's dismissal of appellant Weil's complaint because she failed to post a $40,000 undertaking ordered by the court pursuant to section 11(e) of the Securities Act of 1933 (the '33 Act), 15 U.S.C. § 77k(e). Weil contends that issuance of this order was an abuse of discretion. She also contends that the court erred in refusing to certify her case as a class action, in denying a motion for summary judgment on the issue of liability, and in ordering that she pay one defendant's attorneys fees on appeal as a condition to the court's substituting such defendant's legal representative as a party-defendant. Finally, Weil assigns error to the court's refusal to require that appellee Investment Indicators Fund (the Fund) answer certain questions asked by Weil during discovery proceedings. This court has jurisdiction pursuant to 28 U.S.C. § 1291.[1]
 
 
 2
 * The Fund is an "open-end, no-load"[2] mutual fund registered with the Securities and Exchange Commission (SEC) under the Investment Company Act of 1940 and the '33 Act. The Fund's only significant asset is its portfolio of stock, which is managed by Investment/Indicators Research and Management, Inc. (IIRM). Fund shares are marketed through various brokers who recommend the Fund to their customers in return for the privilege of handling a share of the Fund's portfolio transactions.
 
 
 3
 Beginning in the summer of 1968, various brokers started offering and selling Fund shares to persons residing in states where the Fund had not registered its shares pursuant to applicable Blue Sky laws. Although aware of these sales efforts,[3] the Fund did not register its shares in most states.[4] This failure to register the shares was not disclosed in either the Fund's prospectus of November 5, 1968 (the '68 prospectus), or that of October 29, 1969 (the '69 prospectus).
 
 
 4
 Weil purchased 443.185 shares of the Fund over a period extending from December 19, 1968 to November 26, 1969.[5] These purchases were made after Weil received an unsolicited letter from Nardone, a broker who handled some of the Fund's portfolio transactions. Nardone had enclosed the '68 prospectus with the letter, and had highly recommended that Weil purchase Fund shares. Weil redeemed these shares in mid-1970 at a substantial loss per share.
 
 
 5
 In late 1970, the Texas Securities Commission suspended sales of Fund shares to Texas residents because the Fund had failed to register its shares as required by that state's Blue Sky law. Fearing that it had exposed itself to significant liability by failing to register its shares in Texas and other states, the Fund sought an SEC order suspending redemption of Fund shares. The order was issued on December 22, 1970, and remained in effect for about eight months.
 
 
 6
 Alleging violations of numerous federal securities laws,[6] Weil filed suit in the district court against the Fund, IIRM, Nardone and his employer, Charles H. Plohn & Co., and various officers, directors, and alleged control persons of the Fund and IIRM. The suit was filed as a class action on behalf of all persons who acquired shares of the Fund after November 12, 1968 (the effective date of the '68 prospectus), including those who were unable to sell their shares because of the eight-month SEC suspension of Fund share redemption, and those who had not yet sold their shares.
 
 
 7
 The substance of the complaint is that the Fund's failure to register its shares pursuant to the Blue Sky laws of most states was a material fact which should have been disclosed in the '68 and '69 prospectuses.[7] Weil alleges that the failure to register subjected the Fund to large, contingent liabilities which, if realized, would have substantially reduced the value of Fund shares. Weil further alleges that failure to disclose this contingent liability was a material omission, and that disclosure would have deterred her and other members of the alleged class from purchasing Fund shares in the first place.[8]
 
 
 8
 The district court declined to certify Weil's suit as a class action, directing that the case proceed through discovery as an individual action "unless and until further developments should make proper the court's redetermination of the class." At one point in the discovery proceedings, the defendants refused to answer certain of Weil's questions and discovery requests, claiming that they required disclosure of privileged information. These questions and requests related to communications between officers of the Fund and the Fund's Blue Sky counsel.
 
 
 9
 After three years of discovery, Weil moved for summary judgment on the issue of liability, and asked the court to reconsider its earlier denial of class certification. Both motions were denied. The defendants to the suit (appellees on this appeal) then moved for an order pursuant to section 11(e) to require Weil to post an undertaking in the amount of $40,000 for their costs and attorneys fees. Weil opposed this motion, and renewed her earlier motion for the court's reconsideration of its denial of class certification. In the alternative, she moved for certification of an interlocutory appeal to this court on the class certification issue. She also moved the court to substitute a deceased defendant's attorney as a party-defendant. The district court granted defendants' motion and denied the first two of Weil's motions. It granted Weil's substitution motion on the condition that Weil pay the legal representative's attorneys fees on appeal if such appeal were unsuccessful. When Weil failed to post the undertaking as ordered, the court ordered her complaint dismissed with prejudice as to all defendants. Weil appeals from this order of dismissal.
 
 II
 
 10
 Weil's complaint was dismissed when she failed to post an undertaking ordered pursuant to section 11(e) of the '33 Act. Accordingly, we consider first whether the district court properly ordered Weil to post such an undertaking.
 
 
 11
 Section 11(e) gives the district court discretion to require a party to post security sufficient to cover the costs and attorneys fees of opposing parties. 15 U.S.C. § 77k(e). The section provides that costs and fees may be awarded to such parties in the event they prevail in the action and the court finds the claim or defense maintained by the losing party to have been without merit. Although section 11(e) requires that the court make an explicit finding of lack of merit before fees may be awarded, the section has been read as permitting the awarding of fees in a broader range of cases than is permissible under the district court's equitable power to award such fees for claims or defenses maintained in bad faith. See Nemeroff v. Abelson, 620 F.2d 339, 349-50 (2d Cir. 1980).
 
 
 12
 The appropriate standard for determining whether an undertaking should be required is whether "the defendants (have) show(n) that the plaintiff has commenced her suit in bad faith or that her claim borders on the frivolous." Straus v. Holiday Inns, Inc., 460 F.Supp. 729, 732-33 (S.D.N.Y.1978); accord Can-Am Petroleum Co. v. Beck, 331 F.2d 371, 374 (10th Cir. 1964); Linchuck v. Cooper, 43 F.R.D. 382, 384 (S.D.N.Y.1967). Nevertheless, an order requiring an undertaking need not be based on a formal, factual finding that the claim or defense is obviously without merit or is asserted in bad faith; such a finding is premature and inappropriate at the time when the decision whether to require an undertaking must be rendered. Linchuck v. Cooper, supra, at 384; Dabney v. Alleghany Corp., 164 F.Supp. 28, 33 (S.D.N.Y.1958); see Straus v. Holiday Inns, Inc., supra, at 733-34 & n.3. It is only required that an eventual finding of bad faith or obvious lack of merit appear likely to the district court in view of the evidence before it. See Dabney v. Alleghany Corp., supra, at 33.
 
 
 13
 Thus, whether the district court erred in requiring that Weil post an undertaking depends on whether there is sufficient evidence in the record that her complaint was likely to be found obviously without merit or to have been brought or prosecuted in bad faith. However, any conclusion by us that the record contains the necessary quantum of evidence to enable us to affirm the district court would be seriously undermined were we also to conclude that the Fund was not entitled to a claim of privilege in refusing to respond to some of Weil's questions and discovery requests; responses might have provided or led to convincing evidence of the merits of Weil's allegations. Therefore, we now consider whether the district court properly refused to order appellees to answer Weil's disputed questions and requests. Only after resolution of this issue do we reach the question whether the undertaking was properly ordered.
 
 
 14
 * Weil challenges the Fund's right to invoke the attorney-client privilege in refusing to respond to discovery questions and requests relating to advice given to the Fund by outside counsel regarding registration of Fund shares pursuant to state Blue Sky laws. It is well established that a corporation is entitled to assert this privilege. See, e. g., Garner v. Wolfinbarger, 430 F.2d 1093, 1097 & n.10 (5th Cir. 1970), cert. denied, 401 U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 323 (1971); United States v. Bartone, 400 F.2d 459, 461 (6th Cir. 1968), cert. denied, 393 U.S. 1027, 89 S.Ct. 631, 21 L.Ed.2d 571 (1969); Radiant Burners, Inc. v. American Gas Ass'n, 320 F.2d 314, 322-23 (7th Cir.) (en banc), cert. denied, 375 U.S. 929, 84 S.Ct. 330, 11 L.Ed.2d 262 (1963). Weil urges that we follow Garner v. Wolfinbarger, supra, which held that a corporation may not invoke the attorney-client privilege in certain shareholder derivative actions. 430 F.2d at 1103-04. The Garner court reasoned that it was anomalous to allow a corporation to assert the privilege against the shareholders who own it, because the corporate attorney ultimately acts on their behalf. Id. at 1101.
 
 
 15
 Without passing on the merits of Garner, we find it inapposite to the case before us. Weil is not currently a shareholder of the Fund, and her action is not a derivative suit. The Garner plaintiffs sought damages from other defendants in behalf of the corporation, whereas Weil seeks to recover damages from the corporation for herself and the members of her proposed class. Garner 's holding and policy rationale simply do not apply here.
 
 
 16
 Weil also argues that even if the Fund was initially entitled to invoke the privilege, it waived this right when it disclosed privileged information during other discovery proceedings. One disclosure occurred during the deposition of defendant-appellee Schwab, an officer, director, and alleged control person of the Fund. Schwab testified that the Fund had been advised by its Blue Sky counsel that "it would be best to register wherever the Fund had a single shareholder." The other disclosure was the alleged release by the Fund to the SEC of a letter written by appellee Birkie, the Fund's in-house counsel, to Blue Sky counsel, in which Birkie suggested that the Fund only register its shares in certain states.[9]
 
 
 17
 By making claims against appellees that require proof of scienter, Weil has alleged that the Fund acted with intent to defraud, deceive, or manipulate when it sold its shares without registering them and without disclosing to prospective purchasers the potential consequences of nonregistration. The Fund has subsequently disclosed[10] the content of a privileged communication in which Blue Sky counsel suggested that the Fund was indeed required to register in every state where it had a shareholder. How the Fund understood its legal obligations regarding registration clearly is relevant and material to whether it acted with scienter. The question, then, is whether the Fund may disclose a privileged attorney communication about a matter that is relevant and material to issues in the case, and then invoke the privilege to prevent discovery of other communications about the same matter.
 
 
 18
 Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed. Diversified Industries, Inc. v. Meredith, 572 F.2d 596, 602 (8th Cir. 1977); Radiant Burners, Inc. v. American Gas Association, supra, 320 F.2d at 323 (quoting VIII J. Wigmore, Evidence § 2291, at 554 (McNaughton rev. 1961)). Accordingly, it has been widely held that voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject. E. g., United States v. Cote, 456 F.2d 142, 144-45 (8th Cir. 1972); Handgards, Inc. v. Johnson & Johnson, 413 F.Supp. 926, 929 (N.D.Cal.1976); Duplan Corp. v. Deering Milliken, Inc., 397 F.Supp. 1146, 1161, 1191 (D.S.C.1974); Haymes v. Smith, 73 F.R.D. 572, 576-77 (W.D.N.Y.1976); ITT Corp. v. United Telephone of Florida, 60 F.R.D. 177, 185-86 (M.D.Fla.1973); see McCormick's Handbook on the Law of Evidence § 93, at 194-95 (E. Cleary 2d ed. 1972); VIII J. Wigmore, supra, § 2327, at 638 P (4).[11] See also United States v. Bump, 605 F.2d 548, 551 (10th Cir. 1979); In re Horowitz, 482 F.2d 72, 81 (2d Cir.), cert. denied, 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973); United States v. Aronoff, 466 F.Supp. 855, 860-62 (S.D.N.Y.1979); In re Grand Jury Subpoena, 438 F.Supp. 1176, 1177-78 (S.D.N.Y.1977). Professor Wigmore explains:
 
 
 19
 (W)hen (the privilege holder's) conduct touches a certain point of disclosure, fairness requires that his privilege shall cease whether he intended that result or not. He cannot be allowed, after disclosing as much as he pleases, to withhold the remainder. He may elect to withhold or disclose, but after a certain point his election must remain final.
 
 
 20
 VIII J. Wigmore, supra, at 636; accord United States v. Woodall, 438 F.2d 1317, 1324 (5th Cir. 1970) (en banc), cert. denied, 403 U.S. 933, 91 S.Ct. 2262, 29 L.Ed.2d 712 (1971); McCormick, supra, at 194.
 
 
 21
 Appellees contend that the Fund cannot be found to have waived its attorney-client privilege because it did not intend waiver when it made the disclosure. It argues that waiver must be express to be effective, and that waiver cannot result from inadvertent disclosure.
 
 
 22
 We are not persuaded by this argument. All three cases cited by appellees in support of it were decided under state law, and thus their holdings are distinguishable from cases such as this one in which federal law must be applied.[12] In contrast to appellees' position, the federal cases presuppose that waiver may be effected by implication. See, e. g., Tasby v. United States, 504 F.2d 332, 336 (8th Cir. 1974), cert. denied, 419 U.S. 1125, 95 S.Ct. 811, 42 L.Ed.2d 826 (1975); United States v. Woodall, supra, 438 F.2d at 1324 (citing VIII Wigmore, supra, § 2327, at 637-38); United States v. Aronoff, supra, 466 F.Supp. at 861; In re Grand Jury Proceedings, 73 F.R.D. 647, 652 (M.D.Fla. 1977). Moreover, the subjective intent of the party asserting the privilege is only one factor to be considered in determining whether waiver should be implied. Duplan Corp. v. Deering Milliken, Inc., supra, 397 F.Supp. at 1162; see VIII Wigmore, supra, at 636. Finally, "inadvertence" of disclosure does not as a matter of law prevent the occurrence of waiver. See, e. g., Underwater Storage, Inc. v. United States Rubber Co., 314 F.Supp. 546 (D.D.C.1970); McCormick, supra, § 93, at 194 n.14.
 
 
 23
 As with all evidentiary privileges, the burden of proving that the attorney-client privilege applies rests not with the party contesting the privilege, but with the party asserting it. United States v. Bump, supra, 605 F.2d at 551; United States v. Landof, 591 F.2d 36, 38 (9th Cir. 1978); In re Horowitz, supra, 482 F.2d at 82. One of the elements that the asserting party must prove is that it has not waived the privilege. United States v. Landof, supra, at 38 (quoting VIII J. Wigmore, supra, § 2292, at 554); In re Grand Jury Proceedings, 517 F.2d 666, 670 (5th Cir. 1975); United States v. United Shoe Machinery Corp., 89 F.Supp. 357, 358-59 (D.Mass.1950). The Fund has disclosed the content of a privileged communication which is relevant and material to an issue in the case. Against this, the Fund's bare assertion that it did not subjectively intend to waive the privilege is insufficient to make out the necessary element of nonwaiver.[13]
 
 
 24
 We conclude, therefore, that the Fund has waived its attorney-client privilege. However, the Fund's disclosure occurred early in the proceedings and was made to opposing counsel rather than to the court. Weil does not allege that it prejudiced her in any way. Thus, we find that the Fund waived its privilege only as to communications about the matter actually disclosed namely, the substance of Blue Sky counsel's advice regarding registration of Fund shares pursuant to the Blue Sky laws of the various states.[14] United States v. Upjohn, 600 F.2d 1223, 1227 n.12 (6th Cir. 1979), rev'd on other grounds, -- U.S. --, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981); United States v. Aronoff, supra, 466 F.Supp. at 862-63; McCormick, supra, § 93, at 195 n.17. Accordingly, we reverse the district court's denial of Weil's motion to compel appellees to respond to discovery requests and questions relating to such advice, and remand with instructions that they be directed to respond to such requests and questions.
 
 B
 
 25
 It is conceivable that appellees' responses will yield additional evidence relevant to the merits of Weil's claim. For example, it is possible that such answers will show that the Fund intentionally ignored an opinion of Blue Sky counsel that it was legally required to register its shares in all fifty states. Such a showing would effectively rebut any showing by appellees that requiring an undertaking was appropriate i. e., that Weil's suit was maintained in bad faith, or was so completely without merit as to border on the frivolous. At this point, therefore, a ruling by this court as to whether the district judge abused his discretion in ordering the undertaking would be premature. Cf. Donaldson v. Pillsbury Co., 554 F.2d 825, 831 n.5, 833 (8th Cir. 1977) ("by (the court's) erroneously limiting introduction of evidence relevant to plaintiff's claims, plaintiff may have been prevented from establishing the credibility of her claims"), cert. denied, 434 U.S. 856, 98 S.Ct. 177, 54 L.Ed.2d 128 (1978). Accordingly, we vacate the court's orders requiring the undertaking and dismissing Weil's complaint for failure to post the undertaking. On remand, the court should reconsider its order requiring the undertaking in light of any additional evidence produced by reason of the Fund's partial waiver of its attorney-client privilege.
 
 III
 
 26
 We now turn to the class certification issue. A denial of class certification is an interlocutory order not appealable until entry of final judgment. See Coopers & Lybrand v. Livesay, 437 U.S. 463, 468-69, 98 S.Ct. 2454, 2457-58, 57 L.Ed.2d 351 (1978). Dismissal of an action with prejudice is a final judgment. On appeal from such a dismissal, therefore, this court has jurisdiction to review a denial of class certification. Cotten v. Treasure Lake, Inc., 518 F.2d 770, 772 (6th Cir.), cert. denied, 423 U.S. 930, 96 S.Ct. 281, 46 L.Ed.2d 259 (1975); Monarch Asphalt Sales Co. v. Wilshire Oil Co. of Texas, 511 F.2d 1073, 1077 (10th Cir. 1975); see Sackett v. Beaman, 399 F.2d 884, 889 (9th Cir. 1968). Conceptual difficulties arise, however, when, as here, the dismissal is found to have been improper, the judgment reversed or vacated, and the case remanded for further proceedings. In such a situation, there no longer exists a final judgment which supports this court's review of interlocutory orders, even though such a judgment existed at the outset of the appeal. The issue here, then, is whether our vacation of the judgment below should prevent us from reviewing the district court's denial of class certification. Recent authority from this circuit suggests that we should not review the denial at this time.
 
 
 27
 In Blake v. City of Los Angeles, 595 F.2d 1367 (9th Cir. 1979), cert. denied, 446 U.S. 928, 100 S.Ct. 1865, 64 L.Ed.2d 281 (1980), appellants, who were representatives of a certified class, sought review of summary judgment rendered in favor of appellees. Appellees filed a cross-appeal asking for review of the class certification in the event the summary judgment were to be reversed. Although the panel there did reverse the judgment and remand the case, it nevertheless found review of the class certification issue inappropriate:
 
 
 28
 The same considerations that normally bar interlocutory review of class certification orders (i. e., potential waste of judicial resources and lengthening of litigation) persuade us that we should not now review the class certification order merely because the district court erroneously entered summary judgment for appellees. Because we remand the case for further proceedings, the class certification order may be modified later. Nothing precludes appellees from obtaining review of the order after final judgment ultimately is entered.
 
 
 29
 Id. at 1386 (citations omitted).
 
 
 30
 In Huey v. Teledyne, Inc., 608 F.2d 1234 (9th Cir. 1979), appellant sought review of the dismissal with prejudice for want of prosecution of her uncertified class action. The panel there held that where the record shows that a denial of class certification caused a failure to prosecute, such denial is not reviewable on appeal of the resulting dismissal:
 
 
 31
 The policy against piecemeal appeals applies to this case even though a final judgment has been entered.
 
 
 32
 We recognize that we must balance conflicting interests. The hardship in refusing review of the denial of class certification after a dismissal allegedly caused by that denial and the forcing of some small claims to trial must be measured against the incentive for dilatory failure to prosecute in the district court that would otherwise result. We conclude that the balance should be struck to discourage piecemeal appeals. Where the record shows that the denial of class certification caused the failure to prosecute, that ruling does not merge in the final judgment for purposes of appellate review, at least where, as here, the resulting dismissal was proper.
 
 
 33
 Id. at 1239, 1240. See also Bowe v. First of Denver Mortgage Investors, 613 F.2d 798, 800-02 (10th Cir.), cert. denied, 447 U.S. 906, 100 S.Ct. 2989, 64 L.Ed.2d 855 (1980).
 
 
 34
 In the most recent case, Marks v. San Francisco Real Estate Board, 627 F.2d 947 (9th Cir. 1980), plaintiffs-appellants' class action was first certified, then decertified and ultimately dismissed. On appeal, the three members of the panel agreed that the dismissal was an abuse of discretion. Id. at 948-49 (opinion by Larson, District Judge). Thus, the judgment was reversed and the case remanded. Id. at 949. Two members of the panel, however, declined to review the decertification order, believing that to do so would be inappropriate in view of the panel's reversal of the judgment supporting the appeal. Id. at 951-52 (Sneed, Circuit Judge, concurring in the result); id. at 952 (Kennedy, Circuit Judge, concurring).[15]
 
 
 35
 We believe that the holdings of Blake and Marks and the policies articulated by Huey suggest a general rule that interlocutory orders regarding certification and decertification of class actions should not be reviewed by this court when the judgment pursuant to which appeal was taken is reversed or vacated and the case remanded. In such cases, a certification or decertification order need not be immediately reviewed, because on remand another final judgment will eventually be entered which will support review of the order. Marks v. San Francisco Real Estate Board, supra, 627 F.2d at 952 (Sneed, Circuit Judge, concurring in the result); Blake v. City of Los Angeles, supra, 595 F.2d at 1386. In such cases, therefore, the policy against piecemeal review should prevail over the competing temptation to reach out to review the order merely because it is before the court. See id.; Huey v. Teledyne, Inc., supra, 608 F.2d at 1240.[16]
 
 
 36
 Weil can show no injustice or prejudice which would result from our failure to review the class certification issue at this time. Cf. Gillespie v. U. S. Steel Corp., 379 U.S. 148, 152-53, 85 S.Ct. 308, 310-11, 13 L.Ed.2d 199 (1964) (delay in plaintiffs' receiving damages to which they were unquestionably entitled was factor weighing against general policy of avoiding piecemeal review). It is true that she may find it more difficult financially to maintain her suit below as an individual rather than a class action, but this reason was rejected by Huey (albeit in a different factual setting) as insufficient to override the policy against piecemeal appeals. See 608 F.2d at 1240. Weil can obtain review of the order denying class certification after the eventual entry of final judgment on remand; immediate review is not necessary to keep her case alive. Accordingly, we decline to review at the present time the district court's refusal to certify Weil's proposed class.
 
 IV
 
 37
 In summary, we reverse the district court's refusal to order appellees to respond to Weil's discovery requests and questions that relate to advice received by the Fund from Blue Sky counsel regarding state registration. We vacate the district court's order requiring an undertaking, as well as the order dismissing Weil's complaint for failure to post the undertaking, and remand for further proceedings consistent with this opinion.[17]
 
 
 38
 REVERSED in part, VACATED in part, and REMANDED.
 
 
 
 *
 Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation
 
 
 [1]
 Some of these issues were raised in an earlier interlocutory appeal which was apparently dismissed for lack of jurisdiction. Weil v. Investment/Indicators Fund, No. 77-1416 (9th Cir. Dec. 7, 1977). The issues are now properly before us
 
 
 [2]
 According to the briefs, this means that shares in the Fund are not traded on any market, but are purchased from and redeemed by the Fund directly, without assessment of brokers' commissions. The price of Fund shares is determined by the aggregate market value of the Fund's stock portfolio at the time of the contemplated transaction, divided by the number of shares outstanding at that time
 
 
 [3]
 The Fund knew that at least one broker had offered Fund shares to residents of a state in which the shares were not registered. Additionally, the Texas Securities Commission advised the Fund in a letter dated October 8, 1969 that "(i)t is essential that (Fund) shares be registered with this office before any sales are made to Texas residents."
 
 
 [4]
 Eventually, Fund shares were held by persons residing in all fifty states, yet the shares were registered in only seven states
 
 
 [5]
 These shares were actually purchased by Weil and her husband. The husband was a party to the original complaint in this case, but has since died. Although the husband's death was suggested on the record, no party ever moved for substitution of his legal representative in this action. Therefore, he should have been dismissed as a party-plaintiff pursuant to Fed.R.Civ.P. 25(a) (1)
 
 
 [6]
 Weil alleged violations of sections 11, 12, and 15 of the '33 Act; sections 10(b), 15(c), and 20(a) of the Securities Exchange Act of 1934; Rule 10b-5; sections 34(b), 36, and 48(a) of the Investment Company Act of 1940; and section 206 of the Investment Advisers Act of 1940
 
 
 [7]
 Weil also made numerous allegations regarding IIRM's management of the Fund. Weil does not argue or otherwise discuss these allegations in her briefs as bearing on the question whether her complaint is obviously without merit or being maintained in bad faith. See Part II infra. Neither does she dispute appellees' assertion that the claims represented by these allegations have been abandoned. On this appeal, therefore, we do not consider these allegations in connection with any issue. Cf. Shapiro v. Midwest Rubber Reclaiming Co., 626 F.2d 63, 66 n.6 (8th Cir. 1980) (order below which was noticed for appeal but not challenged in briefs treated as abandoned issue)
 
 
 [8]
 This alleged potential liability apparently failed to materialize. Throughout the course of this litigation, the Fund has consistently asserted that it has not been determined by any court or agency to have violated the Blue Sky laws of any state, nor has it rescinded any share purchases or otherwise paid out damages because of liability for failure to register shares. Weil has never contested these assertions. At this point, any claims which might have resulted in actual liability are barred by applicable statutes of limitation
 
 
 [9]
 There is a conflict in the evidence about whether the Fund voluntarily disclosed the letter. Witness Jones of the SEC testified that he had permission from the Fund to examine the files that contained the letter. Schwab and Birkie, however, testified that the SEC was not authorized to examine the letter
 
 
 [10]
 As one of its officers and directors, Schwab was clearly in a position to speak for the Fund
 
 
 [11]
 Some courts have reached the same result by ruling that although disclosure does not amount to waiver of the privilege, it extinguishes the element of confidentiality that one must show in order to claim the privilege. E. g., In re Langswager, 392 F.Supp. 783, 786 (N.D.Ill.1975); see United States v. Pauldino, 487 F.2d 127, 130 (10th Cir. 1973), cert. denied, 415 U.S. 981, 94 S.Ct. 1572, 39 L.Ed.2d 878 (1974); In re Horowitz, 482 F.2d 72, 81 (2d Cir.), cert. denied, 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973)
 
 
 [12]
 In re Associated Gas & Elect. Co., 59 F.Supp. 743 (S.D.N.Y.1945), Connecticut Mutual Life Ins. Co. v. Shields, 18 F.R.D. 448 (S.D.N.Y.1955), and In re Magida, 12 F.R.D. 74 (S.D.N.Y.1951), all involved application of the New York state statute that governs use of the privilege in that jurisdiction. All issues on this appeal, however, are controlled by federal common law. See Fed.R.Evid. 501
 
 
 [13]
 Indeed, when, as here, the privileged communication is voluntarily disclosed without objection by the asserting party's counsel and in the absence of surprise or deception by opposing counsel, it may be unnecessary to look beyond the objective fact of disclosure in ruling on the question of waiver. See Underwater Storage Co. v. United States Rubber Co., supra, 314 F.Supp. 548-49; McCormick, supra, § 93, at 194 & n.14, 196-97
 
 
 [14]
 Because this is the same matter allegedly disclosed by the Birkie letter, we find it unnecessary to decide whether the circumstances surrounding the SEC's examination of that letter amounted to the Fund's waiver of its privilege with respect to the letter's contents
 
 
 [15]
 The two judges, however, did not agree on why review was inappropriate. Judge Sneed thought that to engage in review would encourage efforts to obtain dismissals following adverse decertification orders, so as to secure interlocutory review contrary to the spirit of Coopers & Lybrand v. Livesay, supra, and the policies articulated in Huey. 627 F.2d at 951, 952. Judge Kennedy believed that resolution of the question was controlled by Blake. 627 F.2d at 952. Both judges agreed that the case was not affected by United States Parole Comm'n v. Geraghty, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980) (on appeal from final judgment, mooting of putative class representative's individual claim does not preclude review of denial of class certification). 627 F.2d at 952-53
 
 
 [16]
 But cf. Gillespie v. United States Steel Corp., 379 U.S. 148, 153, 85 S.Ct. 308, 311, 13 L.Ed.2d 199 (1964):
 It is true that review of this case by the Court of Appeals could be called 'piecemeal'; but it does not appear that the inconvenience and cost of trying this case will be greater because the Court of Appeals decided the issues raised instead of compelling the parties to go to trial with them unanswered. And it seems clear now that the case is before us that the eventual costs will certainly be less if we now pass on the questions presented here rather than send the case back with those issues undecided.
 
 
 [17]
 On remand, the court should dismiss Weil's deceased husband as a party-plaintiff. See note 5 supra. The court should also reconsider its order requiring an undertaking in light of any evidence produced by appellees' responses to Weil's discovery requests and questions. Because Weil will have an opportunity to renew her motion for partial summary judgment in light of any such evidence, we find it unnecessary to consider at this time her contention that summary judgment was improperly denied. Because Weil has prevailed in part on this appeal, she will not have to pay the legal representative's attorneys fees under the district court's order that she do so in case of her unsuccessful appeal. Thus, her appeal from that order is moot